[No. 32026. Department One. October 16, 1952.]

G. E. KARLEN et al., *Appellants*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES et al., *Respondents*.[1]

*Metzger, Blair, Gardner & Boldt,* for appellants.

*The Attorney General, James B. Wilson, Assistant,* and *Burton W. Lyons, Jr.,* for respondents.

GRADY, J.—On December 3, 1951, the superior court entered a judgment affirming an order of the board of industrial insurance appeals. The order allowed a pension to the widow of a deceased workman. The employer has appealed from the judgment.

[1]Reported in 249 P. (2d) 364.

On February 25, 1948, Joe Mastrapa was in the employ of the Eatonville Lumber Co. He slipped and fell from a planing machine, receiving a blow on his head and a dislocation of a metacarpal joint of the left hand. No physical or organic evidence of head injury developed. The hand injury required extended medical treatment and ultimately surgery. The result of the surgery was such that Mastrapa became physically fit to engage in gainful employment.

The decedent had developed subjective symptoms of mental disorder. Later, he entered the Western State Hospital as a voluntary patient. He was suffering from manic-depressive psychosis, depressed type. On September 15, 1948, while at the hospital, he thrust his head against a running power saw, inflicting injuries which immediately caused his death.

The special verdict submitted to the jury was composed of two interrogatories: "Did the death of Joe Mastrapa result from conditions relating to his extrahazardous employment with the Eatonville Lumber Co." The jury gave an affirmative answer. "Did Joe Mastrapa's death result from a deliberate voluntary intent to take his own life so that his widow is not entitled to a widow's pension." The jury gave a negative answer.

By their assignments of error, appellants urge there was no sufficient admissible evidence to go to the jury of causal connection between the thumb injury and the manic-depressive psychosis, and no evidence that when the decedent took his life it was not the result of his deliberate intention.

On the question of causal connection between the thumb injury and the mental condition of decedent, three physicians gave testimony. The testimony of two of the physicians was negative. One physician, in response to a hypothetical question, expressed the opinion that there was a causal connection between the injury and the subsequent mental condition. It is conceded by appellants in their brief that, if the testimony of the latter physician was admissible, an issue of fact was made on such causal connection.

The appellants' objection to the testimony of the physician is that it was taken by an examiner for the board of industrial insurance appeals at a hearing conducted before him and later presented to the board and made a part of the record when the board reviewed the action taken by the supervisor in allowing the claim made by the widow of the decedent.

When the order of the supervisor allowing the widow's claim for pension was before the board for review, one of its examiners conducted hearings at which the testimony of lay and medical witnesses was taken. The examiner occupied a dual role, in that he examined witnesses and framed and propounded the hypothetical question submitted to a physician testifying favorably to the claimant, and later at the hearing before the board presented such testimony for consideration. It is argued that the fact that the examiner for the board acted in the dual capacity of a hearing officer and an advocate for the department, a party litigant, had the effect of putting the board in the position of acting through its examiner as advocate for a party to the controversy instead of being an independent quasi-judicial body. The conclusion is that appellants were denied a fair and impartial hearing and due process of law.

Attention is called to the criticism made by the board of industrial appeals in its first biennial report of the practice of examiners acting in a dual capacity and to many official conferences which were had to devise ways and means to change the practice. The procedure has been changed, but as this case was pending when the board commenced to function, it permitted the continued use of the former method.

The board of industrial insurance appeals is a tribunal created by statute supplanting the joint board of the department of labor and industries. It has been given jurisdiction to hear and determine appeals taken from the action of the supervisor upon industrial insurance claims. When a workman is injured and makes a claim to the department, it is investigated by the supervisor, and it is his duty to

make a determination thereof, from which an appeal may be taken to the board of industrial appeals. In order to properly review the action taken by the supervisor, the board has authority to summon and examine witnesses. Examiners are chosen who are authorized to hold hearings at convenient places and take testimony of witnesses. The board considers the data gathered, together with other information obtained, and makes findings of fact and an order, from which an appeal to the superior court may be taken.

■ The courts cannot be concerned with the practice or procedure of the board of industrial insurance appeals in the hearing and determination of appeals from orders of the supervisor, unless it should be made to appear that by reason thereof the interested parties could not be given a fair and impartial hearing or were denied due process of law. We have examined the record on appeal from the board of industrial appeals to the superior court and find that all interested parties had full opportunity to submit testimony, examine and cross-examine witnesses, and had a full and complete hearing on due and proper notice before such board.

We find no merit to the claims of denial of a fair and impartial hearing or due process of law. The manner of taking the testimony of the physician and its presentation to the board on appeal from the order of the supervisor did not render such testimony inadmissible in evidence to be used either by the appeal tribunal or on appeal from its order to the superior court. These questions were presented to the superior court on appeal and decided adversely to appellants. We concur in the rulings of the trial court.

The second assignment of error is governed by RCW 51 .32.020, the applicable part of which reads as follows:

"If injury or death results to a workman from the deliberate intention of the workman himself to produce such injury or death, . . . neither the workman nor the widow, widower, child, or dependent of the workman shall receive any payment whatsoever out of the accident fund."

■ We have decided that if an injured workman takes his own life pursuant to an irresistible or uncontrollable

impulse so to do, his widow is entitled to a pension. *Gatterdam v. Department of Labor & Industries*, 185 Wash. 628, 56 P. (2d) 693; *McFarland v. Department of Labor & Industries*, 188 Wash. 357, 62 P. (2d) 714.

The court instructed the jury in accordance with the principles set forth in the foregoing cases.

Several witnesses gave testimony as to what they observed about the attitude and conduct of the decedent after he was injured as compared with conditions theretofore existing. They stated that prior to his injury he was a pleasant and jovial person, enjoyed hunting and fishing, and gave attention to his garden and the improvement and beautifying of his home and yard; that he had a happy, carefree disposition and never appeared to be depressed or morose. They stated that shortly after his accident his outlook on life seemed to change; that he became moody and morose; that he despaired of ever being able to work again; that he spoke frequently of dying, and even invited friends to come to his funeral. His chief topic of conversation seemed to be his injured thumb and that he would never be able to use his hand. His friends would try to change the subject and talk about those things in which he was formerly interested, but he always reverted back to his injury. He ceased to go fishing or hunting with his friends and seemed to lose interest in keeping up his home. At times when he worked assisting his neighbors, he would do so for a short time and then claim he could not work and would display considerable emotion and appeared to be very despondent.

There was medical testimony to the effect that a person afflicted with manic-depressive psychosis had feelings of depression, loss of efficiency, inability to carry on, and outwardly presented a picture of dejection and somewhat slowed down activities. Medical experts gave their opinion that, when decedent took his life, he was capable of forming a deliberate intent so to do, and that his act was voluntary rather than induced by any irresistible impulse. Other med-

ical opinion was that his act was impelled by an irresistible impulse rather than an act of deliberate intention.

We are satisfied from an examination of the record that there was sufficient evidence from which the jury could give a negative answer to the interrogatory propounded to the effect that the decedent's death resulted from a deliberate voluntary intent to take his own life; also that the instructions given by the court furnished a correct guide.

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.

January 23, 1953. Petition for rehearing denied.