[No. 39652. Department One. September 25, 1969.]

DOROTHY E. SCHWAB, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.**

*Reported in 459 P.2d 1.

 

*The Attorney General, Lembhard G. Howell* and *Joe Gordon, Jr., Assistants,* for appellant.

*James E. McIver,* for respondent.

HAMILTON, J.—This case involves a claim for a widow's pension under the workmen's compensation act and has been previously before this court. *Schwab v. Department of Labor & Indus.,* 69 Wn.2d 111, 417 P.2d 613 (1966). As the facts of the dispute are extensively dealt with in our former opinion, we shall only skeletonize them now.

On May 24, 1956, respondent's husband suffered a compensable back injury. This injury caused him constant pain. He received hospital and outpatient treatment until his claim for compensation was closed on September 8, 1958. On appeal from the closing order, the Board of Industrial Insurance Appeals reopened the claim for further treatment. The additional treatment continued through June 22, 1959.

Prior to his back injury, the respondent's husband had a history of back trouble, alcoholism, and mental instability. He had attempted suicide several times. He had also been confined in Western State Hospital three times—twice voluntarily and once by court order—where he was diagnosed as suffering from manic-depressive characteristics with some schizophrenic overtones. He was formally released or discharged from Western State Hospital in January, 1957, although he had not been actually confined there since August, 1955. After his injury, he attempted suicide two more times, once in August, 1957, and again in July, 1958.

On June 27, 1959, respondent and her husband visited

some friends where he produced a bottle of liquor and became intoxicated. Although respondent's husband did not become unruly, his host, not wanting his family exposed to drinking, asked him to leave. After arriving home, he telephoned his host and apologized. Shortly thereafter he swallowed at least 12 carbrital sleeping capsules. These capsules had been prescribed for him a few days earlier to relieve a painful shoulder condition which was not related to his back injury.

Efforts to revive respondent's husband were unsuccessful and he died on August 21, 1959, never having regained consciousness.

The workmen's compensation act provides for a pension payable to the widow of a compensably injured workman in either of two circumstances: The injury causes the death; or the workman dies, from whatever cause, while permanently and totally disabled by the injury. RCW 51.32.010, 51.32.050 (2),(6). Here we are concerned only with the first circumstance. In this connection RCW 51.32.020, in pertinent part, provides that the widow of an injured workman is not entitled to a pension under the act "If . . . death results to a workman *from the deliberate intention of the workman* himself to produce such . . . death." (Italics ours.)

Respondent filed her claim for a widow's pension under the act, but it was denied by the Department of Labor and Industries. She appealed to the Board of Industrial Insurance Appeals. Thereafter several hearings were held at which lay and medical testimony was adduced. The board thereupon found:

9. The deceased workman did not take the overdose of carbrital tablets on the night of June 27-28, 1959, as a result of an "uncontrollable impulse" or insane delusion attributable to his 1956 industrial injury, nor as a result of medication prescribed as treatment for that injury.

10. The deceased workman's low back injury of May 24, 1956, was not the proximate cause of his death on August 21, 1959.

After so finding the board sustained the rejection of respondent's claim for a pension.

Respondent appealed to the superior court, contending that the back injury caused her husband to become insane, which in turn occasioned him to commit suicide. The trial court at that time ruled as a matter of law that his death had not been proximately caused by his back injury and dismissed the appeal. Respondent then brought her cause to this court and we reversed, holding there was sufficient evidence to take the matter to the jury on the question of compensability. We then remanded the cause for new trial, with directions to submit the pertinent issues to the jury under instructions consistent with our prior holdings in suicide cases under the workmen's compensation act.

The subsequent trial resulted in a verdict and judgment allowing respondent's claim. The Department of Labor and Industries now brings this appeal. Numerous assignments of error are made, primarily directed to instructions given and refused.

We affirm the judgment.

The principal issue raised by the assignments of error concerns the nature and content of the verdict form which the trial court submitted to the jury. A proper understanding of our determination of this issue suggests a prefatory review of our former decisions involving suicide and the workmen's compensation act.

Ever since our legislature first enacted the workmen's compensation act, that act has contained a provision barring a widow's pension if her injured husband's death "results . . . from the deliberate intention of the workman himself to produce such . . . death." Laws of 1911, ch. 74, § 6 p. 361. *See also* RCW 51.32.020, *supra*.

The first case to reach this court related to possible suicide and the deliberate intent proviso was *Hepner v. Department of Labor & Indus.*, 141 Wash. 55, 250 P. 461 (1926). There the widow claimed that her workman husband suffered a knee injury which caused fluid to accumulate and a toxin to be released into the blood, which in turn caused her husband to become insane and that as a result

of his insanity he wandered onto a railroad track where he was struck and killed. The Department of Labor and Industries resisted the claim, contending, in part, that the claimed cause of death was conjectural, in that it was just as reasonable to conclude, under the evidence, that the deceased workman met his death as a result of voluntary suicide or negligence. The case was submitted to a jury, which returned a verdict for the widow. On appeal this court, without referring to the jury instructions or to the statutory bar, affirmed the jury's verdict and stated with regard to the department's contention concerning possible suicide, at 59:

> The evidence was all but conclusive that decedent was insane; and, from the testimony given by medical experts, it was shown that his state of mind was that of a child. If his mind was in the condition shown by the evidence, it is, of course, apparent that he could not commit suicide, as that term is usually used to indicate the action of a person who is able to weigh and appreciate the thing about to be done; or, as was said in *Case of Sponatski*, 220 Mass. 526, 108 N. E. 466, L. R. A. 1916A 333:
>
> ". . . a voluntary wilful choice determined by a moderately intelligent mental power which knows the purpose and the physical effect of the suicidal act . . ."

The next case to reach this court involving the question was *Gatterdam v. Department of Labor & Indus.*, 185 Wash. 628, 56 P.2d 693 (1936). In that case the workman had suffered great pain from his industrial injury and had been receiving morphine as a part of his treatment. He killed himself with a gun some 4 years after the date of his injury. On appeal from a general jury verdict favorable to Mrs. Gatterdam's claim for a widow's pension, the department urged that the workman's act of self-destruction was an intervening and proximate cause of the death. In affirming the jury's determination, this court cited *Hepner*, and *Delinousha v. National Biscuit Co.*, 248 N.Y. 93, 161 N.E. 431 (1928), and said, at 632:

In the case before us, we have evidence, both lay and medical, upon which the jury could have found that Gatterdam's injury produced insanity, which drove him to the act of self-destruction, and that the act was not the result of "a voluntary wilful choice determined by a moderately intelligent mental power which knows the purpose and the physical effect of the suicidal act."

Judge Geraghty, writing for the court, then went on to approve jury instructions given in the case which, in essence, precluded Mrs. Gatterdam's recovery of a pension unless the jury found (1) the death of the workman was not accidental; (2) the death was occasioned by suicide while the workman was insane—defining insanity as a delirium caused by pain from the injury or by the use of medication employed in the treatment of his injury, or as an uncontrollable impulse with no direction of the mind; and (3) the insanity was proximately caused by the injury.

Judge Geraghty then led into the conclusion of the opinion by stating, at 635:

These instructions clearly informed the jury of the facts to be found, necessary to a recovery by the respondent. In the light of these instructions, the jury must have found, and there is some evidence in the record warranting the finding, that Gatterdam took his own life as the result of an uncontrollable impulse or while in the delirium caused by the pain he was suffering, and the diseased condition of his mind, all having their origin in the injury to his foot.

Next came *McFarland v. Department of Labor & Indus.*, 188 Wash. 357, 62 P.2d 714 (1936). The workman in this case suffered a fractured femur in the course of his employment, which occasioned phlebitis, severe pain, and some mental derangement. He hanged himself. A claim for widow's pension was made and denied. On appeal, the superior court sitting without a jury granted pension rights. Judge Steinert, writing for the court, in affirming, stated, at 361:

The court further found that the death of Mr. McFarland was not inflicted with any deliberation or any deliberate intent on his part, but that the act was committed in a moment of insane impulse; that his mind had become deranged because of the pain, suffering, and

worry caused by the injury, resulting in an acute dementia or a maniacal derangement; and that he was not, at the time, capable of forming a deliberate intent on any subject whatever.

. . .

If a workman, while engaged in extrahazardous employment, sustains an injury, and the injury causes such pain and suffering as proximately results in insanity or in such mental condition as to render the workman subject to periods of delirium, and the workman during a period of such delirium takes his own life, the death may be attributed to the injury and, if so, is compensable under the workmen's compensation act. *Gatterdam v. Department of Labor & Industries*, 185 Wash. 628, 56 P. (2d) 693.

In *Karlen v. Department of Labor & Indus.*, 41 Wn.2d 301, 249 P.2d 364 (1952), the workman involved suffered an industrial injury to his thumb and a blow on his head. He developed manic-depressive psychosis, was hospitalized, and thrust his head against a power saw inflicting fatal injuries. The Department of Labor and Industries awarded his widow a pension. The employer appealed. A jury trial ensued. The jury, by special verdict, sustained the award with appropriate answers to two interrogatories, inquiring, in essence, (1) whether the mental condition and the death involved were proximately caused by the industrial injury, and (2) whether the death resulted from a deliberate intention on the part of the injured workman. These interrogatories were prefaced, among others, by instructions defining proximate cause, proximate contributing cause, deliberate intention, irresistible impulse and uncontrollable impulse. In affirming the jury verdict, this court stated, at 304:

The second assignment of error is governed by RCW 51.32.020, the applicable part of which reads as follows:
"If injury or death results to a workman from the deliberate intention of the workman himself to produce such injury or death, . . . neither the workman nor the widow, widower, child, or dependent of the workman shall receive any payment whatsoever out of the accident fund."

We have decided that if an injured workman takes his own life pursuant to an irresistible or uncontrollable impulse so to do, his widow is entitled to a pension. *Gatterdam v. Department of Labor & Industries,* 185 Wash. 628, 56 P. (2d) 693; *McFarland v. Department of Labor & Industries,* 188 Wash. 357, 62 P. (2d) 714.

The court instructed the jury in accordance with the principles set forth in the foregoing cases.

. . .

We are satisfied from an examination of the record that there was sufficient evidence from which the jury could give a negative answer to the interrogatory propounded to the effect that the decedent's death resulted from a deliberate voluntary intent to take his own life; also that the instructions given by the court furnished a correct guide.

Finally, in *Mercer v. Department of Labor & Indus.,* 74 Wn.2d 96, 442 P.2d 1000 (1968), a case wherein significant portions of the widow's proffered medical testimony concerning the causal relationship between her husband's industrial injury (a hand injury), his subsequent mental condition, and his suicide were stricken, this court upheld the trial court's dismissal of her claim. In so doing it was stated, at 102:

In cases such as this, in view of the statutory language precluding recovery if the workman's death results from his own deliberate intention to take his life, RCW 51.32.020, *supra,* we have allowed recovery only where competent medical evidence established that the decedent acted under an incontrollable impulse or while in a delirium. *Karlen v. Department of Labor & Indus.,* 41 Wn.2d 301, 249 P.2d 364 (1952). Viewing the record in the light most favorable to the plaintiff, *Schwab v. Department of Labor & Indus.,* 69 Wn.2d 111, 417 P.2d 613 (1966), we find it devoid of probative medical evidence that the decedent was acting under an incontrollable impulse or that he was in a state of delirium when he took his life.

This review of our prior decisions on the questions at hand indicates that while we started with and adhere to the requirement of a direct causal relationship between a workman's industrial injury, insanity, and resultant self-

destruction,[1] we have tended to lean away from characterizing, in the traditional tort sense, volitional or conscious suicidal acts as an independent intervening cause precluding compensation. Rather, it appears that we have inclined more toward looking upon RCW 51.32.020 as erecting a statutory bar between cause and a proximately related result. Likewise, it would appear that we have broadened, somewhat, the concept, found in *In re Sponatski,* 220 Mass. 526, 108 N.E. 466 (1915), that an injury occasioned suicidal death to be compensable must occur from "an uncontrollable impulse or in a delirium of frenzy without conscious volition to produce death," by extending it to include irresistible impulse, delirium caused by injury related drugs, pain, and suffering and/or other forms of acute dementia, any of which render the injured workman incapable, at the pertinent time, of forming a volitional and deliberate intent to commit suicide.

■ Against the backdrop of these approaches, and by virtue of RCW 51.32.020, we have not, however, varied in our cases from the view that to render an injured workman's suicidal act compensable from the standpoint of his surviving widow or other eligible dependents, a minimum[2] of two essential factual determinations must be made from competent evidence. They are (1) whether the industrial injury proximately caused the injured workman to suffer a mental derangement which in turn led to his suicidal conduct, and (2) whether the suicidal act was the result of a deliberate and conscious intent on the part of the injured workman to take his own life. From these factual determinations must flow the legal conclusion of whether or not the injury proximately caused the death within the contemplation of the workmen's compensation act.

The immediate and primary issue at hand is whether the

---

[1]Initiated in *Daniels v. New York, N.H. & H. R.R.,* 183 Mass. 393, 67 N.E. 424, 62 L.R.A. 751 (1903), and adopted in *In re Sponatski,* 220 Mass. 526, 108 N.E. 466 (1915).

[2]Disregarding in this reference accident and mistake where such become an issue under the evidence.

jury, because of the manner in which the cause was instructionally submitted to it, properly considered and passed upon the vital factual determinations necessary to the legal conclusion of compensability within the act.

In instruction No. 3, the trial court advised the jury that:

The basic question for you to decide is: "Was the death of Robert W. Schwab a proximate result of the industrial injury of May 24, 1956?"

In deciding this question you will be guided by the rules of law as set forth in these instructions.

The trial court then instructed the jury concerning the nature and import of the presumption of correctness attaching to the findings of the Board of Industrial Insurance Appeals, burden of proof, preponderance of the evidence, proximate cause, proximate contributing cause, RCW 51.32.020, deliberate intention, insanity, and accident. Following these instructions the trial court advised the jury by instruction No. 11:

This is a civil action and requires only ten of your number to agree upon a verdict. Your verdict in this cause will be in the form of a written answer to the following written interrogatory.

INTERROGATORY:

Was the industrial injury of May 24, 1956 a proximate cause of death in accordance with the instructions herein given?

ANSWER: ........................... (Yes or No)

The trial court thus called upon the jury to make, within the framework of the instructions as a whole, the ultimate determination of compensability or noncompensability under the workmen's compensation act.

The appellant, Department of Labor and Industries, contends that the trial court's instructions called for a special verdict, pursuant to CR 49(a), RCW vol. 0,[3] which in turn

---

[3] "The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting

required that the jury make special findings as to each of the essential factual issues. Furthermore, appellant argues the instructions given by the trial court did not clearly delineate the basic factual determinations required to support the ultimate conclusion.

We do not agree with appellant.

It is customary, and perhaps preferable, in workmen's compensation cases that the jury be called upon to return a special verdict containing answers to appropriate and specific interrogatories concerning the ultimate factual issues. Nevertheless, it does not follow that it is prejudicial and reversible error in every such case to call upon the jury to answer only an interrogatory which is tantamount to a general verdict, provided the jury is otherwise adequately instructed upon the factual determinations it must make to support its ultimate and conclusory finding, *e.g., Gatterdam v. Department of Labor & Indus., supra.* This, we are satisfied, was the procedure which the trial court undertook to follow.

Although we are not prepared or willing to recommend the instructional format adopted by the trial court, particularly as related to this type of case, nor can we endorse and approve as models of clarity and accuracy the various instructions given, we are convinced that when the instructions are read as a whole they adequately informed the jury of the basic factual determinations it was required to make. In this latter respect, the instructions were sufficient to permit appellant's counsel to fully argue to the jury appellant's theories regarding causal relationship, intent, degree of insanity, intoxication, mistake and accident.

---

the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his rights to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict." CR 49(a), RCW vol. 0.

The remaining assignments of error concern themselves with the language of the instructions as given and with the failure to give instructions as proposed. Concededly, these assignments have some merit. However, from a reading of the record as a whole, we are convinced that the content of the instructions as given, and the failure to give some instructions that could properly have been given, does not give rise to prejudicial error of such magnitude as to compel or require a new trial in this prolonged litigation.

The judgment is affirmed.

HUNTER, C. J., FINLEY, WEAVER, and McGOVERN, JJ., concur.