IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. COLTON NORRIS NOE, Appellant. | No. 84269-2-I DIVISION ONE UNPUBLISHED OPINION |

DíAZ, J. — A jury convicted Colton Noe of assault in the second degree (by strangulation), with a domestic violence designation, for choking his intimate partner, M.F.[1]  Noe, who is indigent, now argues that the court violated multiple constitutional rights by admitting incriminating statements he made in recorded phone call conversations from jail.  He asserts that the admission of the recordings treated him differently than a wealthier defendant, who could afford to pay bail and be released pretrial, and whose pretrial calls accordingly would not have been recorded and admitted at trial.  He also appeals his $500 victim penalty assessment as excessive.  We affirm Noe's conviction but remand to the trial court to examine Noe's ability to pay the $500 victim penalty assessment.

---

[1] M.F. is referred to by her initials to protect her privacy.

I.    FACTS

During the pertinent time period, Noe and M.F. were both 20 years old and had an intimate relationship "off and on" for about three years, meeting a few times per week.  On March 18, 2022, they met around 11:00 p.m. and drove around while drinking.  During the car ride, Noe accused M.F. of cheating on him.  At some point during their argument, Noe grabbed M.F.'s head and hit it against the steering wheel and dash several times.  At another point, he strangled her for about 10 seconds.  Eventually, Noe took M.F. home.   M.F. did not immediately report her injuries to the police, but eventually did.  Noe was subsequently arrested.

The State initially charged Noe with one count of assault in the second degree by strangulation and suffocation with domestic violence toward an intimate partner and one count of unlawful imprisonment with domestic violence toward an intimate partner.  The court set Noe's bail for $25,000, noting that, although Noe had no prior criminal conviction history, "the assault is serious [,] . . . occurred over an extended period of time and resulted, according to the affidavit, [in] significant physical injuries."   The court further explained that "bail is necessary to, not only assure Mr. Noe's presence at future court appearances, but also to protect the community."

While in jail, Noe made two inculpatory phone calls.  In one phone call, he was asked "you didn't hurt her, did you?" and Noe answered "I did."  In a different phone call, Noe was asked, "You do understand what you did . . . was wrong, right?"  Noe responded, "Yeah . . . I do."  Consistent with the requirements of

Washington's privacy act, chapter 9.73 RCW, the beginning of the call announced that the call was subject to monitoring and recording.

Before trial, Noe's counsel moved in limine to exclude the calls Noe made from jail because such calls disproportionally affect "the poor and disadvantaged" compared with out-of-custody pretrial detainees who "are not burdened with such complication. These challenges implicate and violate the Equal Protection Clause of the Fourth Amendment."

During motions in limine, Noe further argued that, "[d]ue to that disparate impact between a pretrial detainee and any other person who is allowed to remain out of custody, that detention disproportionately affects pretrial detainees." The court denied Noe's motion to exclude the jail calls.[2]

At trial, the State referenced Noe's jail calls in its closing argument:

> Where he says that yeah, he's been charged with Assault 2 and unlawful imprisonment and he and [M.F.] got into it, and "yeah, I kept her from getting out of my car," and "yeah, I did hurt her." And "yes, I know what I did was really wrong." And "yes, I'm very sorry about it." And "yes, we had a fight, and it was about my car."
>
> Those are all things that the defendant said to other people before this trial.

The jury convicted Noe of assault in the second degree, but acquitted him of false imprisonment. The sentencing court sentenced Noe to three months

---

[2] Noe also moved in limine to exclude the jail calls because they should have been subject to a CrR 3.5 hearing, but were not. This issue is not before us and therefore we do not examine it.

incarceration, and granted him credit for time served. Additionally, the court imposed a standard victim penalty assessment of $500. Noe timely appeals.[3]

## II. ANALYSIS

### A. Privileges and immunities

We conclude that the trial court's denial of Noe's motion in limine regarding the jail calls does not violate his privileges or immunities under the Washington State Constitution.

#### 1. Law

Article 1, section 12 of the Washington State Constitution provides that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." WASH. CONST. art. I, § 12. That section was intended to "prevent favoritism and special treatment for a few to the disadvantage of others." Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc., 196 Wn.2d 506, 518, 475 P.3d 164 (2020).

Although article I, section 12 should be interpreted consistently with and ultimately is more protective than the federal equal protection clause, whether a law implicates as a threshold matter a "privilege or immunity" requires an independent analysis. Id. at 518-19. The court applies a two-step analysis: "First, we ask whether a challenged law grants a 'privilege' or 'immunity' for purposes of our state constitution. . . . If the answer is yes, then we ask whether there is a

---

[3] The State filed a notice of cross appeal, but did not file a cross appeal brief or designate any assignments of error in its response brief. We consider the cross appeal abandoned.

'reasonable ground' for granting that privilege or immunity." Id. at 519. A "privilege" or "immunity" for the purposes of our state constitution are benefits that implicate fundamental rights of citizenship. Id. "If there is no privilege or immunity involved, then article I, section 12 is not implicated." Ockletree v. Franciscan Health Sys., 179 Wn.2d 769, 776, 317 P.3d 1009 (2014).

2. Discussion

Noe argues that, because he was criminally charged, and due to his indigence could not post the $25,000 bail, the State withheld his privilege of private phone calls. Specifically, he argues the State "withheld a privilege . . . which it would grant to a defendant who could post bail . . . [S]tated differently, the government affords wealthy defendants an immunity against having their personal conversations used against them at trial."

Importantly, Noe does not challenge the recording statute, or the jail's practice of recording calls, but only the trial court's decision to admit this particular recording. Because the trial court's decision to admit the recording is not a law and does not grant either a privilege or an immunity to any person or class of persons, we find no violation. The admission of the telephone recording in his case has no impact whatsoever on any other defendants. See State v. Young, No. 80907-5-I (Wash. Ct. App. Apr. 12, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/809075.pdf, review denied, 198 Wn.2d 1004, 493 P.3d 736 (2021).[4] Stated otherwise, this trial court's decision to admit

---

[4] Although State v. Young is an unpublished opinion, we may properly cite and discuss unpublished opinions where, as here, doing so is "necessary for a

Noe's recording did not thereby grant a wealthier person the privilege to *not* have their phone calls recorded. The State acknowledged that the jail records *all* phone calls. Therefore, Noe does not adequately identify a privilege or immunity that was granted to anyone else simply because *his* calls were recorded and admitted. If there is no privilege or immunity involved, then article I, section 12 is not implicated—thus Noe's claim fails. Ockletree, 179 Wn.2d at 776.

B. Equal Protection

We conclude that the admission of Noe's jail calls did not violate the equal protection clause of the Washington State Constitution, nor did it violate that of the United States Constitution because any similar recordings that exist may be introduced against any defendant, regardless of wealth.

1. Law

Constitutional challenges are reviewed de novo. State v. Shultz, 138 Wn.2d 638, 643, 980 P.2d 1265 (1999). Challenges based on the equal protection clause of the Washington State Constitution are reviewed with the same legal standards as challenges based on the equal protection clause of the United States Constitution. See, e.g., State v. Coria, 120 Wn.2d 156, 169, 839 P.2d (1992) (citing WASH. CONST. art. I, § 12).

"The equal protection clauses of the Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution require that people similarly situated under the law receive similar treatment from the

reasoned decision."  GR 14.1(c).  We adopt the reasoning of Young as stated in the text above.

State." State v. Haq, 166 Wn. App. 221, 253, 268 P.3d 997 (2012).

To show dissimilar or disparate treatment under the equal protection clause, and thus a violation of his equal protection rights, "[a] defendant must establish that he received disparate treatment because of membership in a class of similarly situated individuals and that the disparate treatment was the result of intentional or purposeful discrimination." State v. Osman, 157 Wn.2d 474, 484, 139 P.3d 334 (2006). "Although equal protection does not require that the State treat all persons identically, any classification must be relevant to the purpose for the disparate treatment." Id.

If a class is adequately identified, "[i]n order to determine whether a state action violates equal protection, one of three different bases of review is employed—strict scrutiny, intermediate scrutiny, or rational basis review. The appropriate level of scrutiny depends upon the nature of the alleged classification and the rights involved." Haq, 166 Wn. App. at 253.

The court applies "strict scrutiny if the individual is a member of a suspect class or the state action threatens a fundamental right." Osman, 157 Wn.2d at 484. We "apply intermediate scrutiny if the individual is a member of a 'semisuspect' class or the state action threatens 'important' rights." Id. However, "[i]f the state action does not threaten a fundamental or 'important' right, or if the individual is not a member of a suspect or semisuspect class, we apply a rational relationship or rational basis test." Id.

2. Discussion

Noe argues that "[a]dmitting government recordings of indigent defendants'

7

personal phone calls burdens the fundamental right to a fair trial guaranteed by . . . article I, section 22. Const. art. I, §§ 3, 22." Noe argues there is a semisuspect class of people unable to afford bail whose rights to a fair trial are impacted by having their calls recorded. He further avers that infringements on this right for this class should be viewed with intermediate scrutiny, a test which the government cannot meet. According to Noe, "the government has no interest in creating a two-tiered system of justice where the type of trial a person has depends on wealth."

Noe relies on State v. Phelan, 100 Wn.2d 508, 514, 671 P.2d 1212 (1983), to argue that indigent people incarcerated pretrial are a semisuspect class. In Phelan, our Supreme Court held that, while physical liberty is a basic right, it is not a "fundamental" right; thus, a deprivation of that liberty which was solely determined by wealth warrants intermediate scrutiny. Phelan, 100 Wn.2d at 514. In applying intermediate scrutiny, the court concluded that "denial of credit against discretionary minimum terms for time actually served in jail prior to sentencing does not satisfy" the intermediate scrutiny test. Id. The key, however, in Phelan was that, while a fundamental liberty right was not implicated, there was a clearly defined class: people serving time in jail before trial. Id.

Here, we first conclude Noe fails to establish that he was treated differently from others who were similarly situated. Osman, 157 Wn.2d at 485. As must be acknowledged, some indigent defendants are released pretrial and some wealthy defendants are not. Noe contends that, nevertheless, he was not able to pay bail when a wealthier person in his position could have, and thereby would have avoided having his personal telephone conversations recorded and admitted at

8

trial. However, Noe "himself could have avoided this scenario, regardless of his wealth and his pretrial detention. He had simply to choose not to have a personal conversation on a telephone after he was warned that the call was subject to recording." Young, slip op. at 7.

Stated otherwise, not all defendants who are indigent are incarcerated. And, further, some affluent defendants *are* jailed to await trial. Of those defendants who are indigent and jailed, not all of them make incriminating statements when they call friends and family from jail. And some jailed people make incriminating statements from jail as well. Thus, it is not one's wealth that predicts whether they make incriminating statements that are later used against them. Specifically, it is not the State's motion to admit, or the court's order admitting, the statements, that creates the class: Noe's own actions did. Id. Thus, there is no similarly situated class of persons being *treated* disparately to which an equal protection analysis could apply.

Furthermore, even if we were to accept that there is a similarly situated class of defendants who could be subject to an equal protection analysis—that is, those who, like Noe, have made incriminating statements on legally recorded telephone calls, for the same reasons Noe did, of which the State has been made aware and which the State admitted (which would be a peculiar class)—Noe "sets forth no reason to believe that any defendant [wealthy or not] under these circumstances would not be subject to admission of the recording at trial." Id.

As this court recently stated:

Certainly, defendants who are in jail awaiting trial are subject to greater surveillance than those who are not, and it surely is so that

9

> some people who remain in custody do so because they cannot afford to post bail. But the fundamental fairness of a system which allows people to "lose the right to liberty simply because that person can't afford to post bail," is not here at issue. We need not address the wisdom of bail in general to conclude that the *admission* of Young's recorded telephone call did not violate his equal protection rights.

Id. (emphasis added) (quoting In re Humphrey, 11 Cal. 5th 135, 142, 482 P.3d 1008, 276 Cal. Rptr. 3d 232 (2021)).

Even if a class of people could be identified, the practice of admitting such statements passes either intermediate or rational basis review. Taking them in reverse order, Noe argues there is no rational basis to admit personal phone calls from jail. However, in other similar cases, we have held that local policies requiring the recording of jail calls warranted and passed rational basis review. See, e.g., Haq, 166 Wn. App. at 254 ("[s]afety, security, and the right of government to reduce criminal activity are all legitimate ends that support the King County jail regulations" allowing the recording phone calls from jail). This is so because "a law will be upheld under rational basis review so long as it bears a rational relation to some legitimate end." Id. And once the jail calls are recorded for a legitimate end, the admission of those statements, under our well-established rules of evidence, is appropriate to the fact-finding mission of trials.

Next, should intermediate scrutiny apply, the practice of admitting the statements is still constitutionally sufficient. "We apply intermediate scrutiny if the individual is a member of a 'semisuspect' class or the state action threatens "important" rights." Osman, 157 Wn.2d at 484. In the event that Noe is a member of a semisuspect class, the State would still have a significant interest in ensuring

10

the safety of the community. Indeed, here, the trial court expressly set Noe's bail at $25,000 "to protect the community," including M.F. Further, the State has an interest in protecting its witnesses' physical safety and the integrity of their testimony, and thus would have an interest in monitoring and admitting calls, should, for example, Noe attempt to contact M.F. Thus, the State has demonstrated that these interests have a sufficient nexus with the monitoring and use of Noe's jail calls. Cf. Phelan, 100 Wn.2d at 514 ("The connection of a denial of jail time credit with only one of the various goals of discretionary minimum terms is insufficient under [intermediate scrutiny] review.").

Finally, Noe offers no authority for his bare assertion that the only admissible jail call recordings *should be* those involving witness tampering. Where a party fails to provide citation to support a legal argument, we assume counsel, like the court, has found none. State v. Loos, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020) (citing State v. Arredondo, 188 Wn.2d 244, 262, 394 P.3d 348 (2017)).[5]

C. Victim penalty assessment

It is well established that historically, sentencing courts are constitutionally permitted to impose a victim penalty assessment regardless of indigency. RCW 7.68.035(1)(a); see, e.g., State v. Tatum, 23 Wn. App. 2d 123, 130, 514 P.3d 763, review denied, 200 Wn.2d 1021, 520 P.3d 977 (2022). However, in 2023, the

---

[5] Because the state equal protection clause is evaluated with the same legal standards as the federal equal protection clause, the panel may decline to conduct an analysis of the federal question. See Coria, 120 Wn.2d at 169 (citing WASH. CONST. art. I, § 12).

Washington state legislature eliminated the $500 victim penalty assessment for indigent persons. RCW 7.68.035(4). Now, upon motion by a defendant:

> [T]he court shall waive any crime victim penalty assessment imposed prior to the effective date of this section if:
>
> . . . .
>
> (b) [t]he person does not have the ability to pay the penalty assessment. A person does not have the ability to pay if the person is indigent as defined in RCW 10.01.160(3).

RCW 7.68.035(5). The new law became effective on July 1, 2023. LAWS OF 2023, ch. 449, § 27.

Here, the trial court imposed a $500 victim penalty assessment upon Noe in 2022. The court most recently deemed Noe indigent for purposes of appeal.

Noe initially challenged the victim penalty assessment as excessive in violation of the excessive fines clause of the Eighth Amendment of the United States Constitution. However, in his reply brief, Noe abandons this challenge and asks us to consider the victim penalty assessment under the newly enacted RCW 7.68.035(4). Specifically, Noe argues that, if even if his sentence may have been technically constitutionally appropriate at the time it was entered, this panel should still remand to instruct the trial court to examine whether he can pay the victim penalty assessment.

As in State v. Ramirez, we hold that, because Noe's case was on direct appeal at the time, it was not final when the new law became effective. 191 Wn.2d 732, 747, 426 P.3d 714 (2018). And thus, although Noe had been previously deemed indigent for other purposes, we remand with an instruction to the trial court to examine whether he has "the ability to pay" the $500 victim penalty

assessment.[6]

### III. CONCLUSION

We affirm Noe's conviction but remand to the trial court to examine Noe's ability to pay the $500 victim penalty assessment.

Díaz, J.

WE CONCUR:

Feldman, J.

Chung, J.

---

[6] Following the noting date of this appeal, Noe moved this court to permit him to add an assignment of error regarding this issue. We find that procedural mechanism unnecessary at this point given how we resolve this assignment of error. Thus, we deny that motion as moot.