[No. 13222-2-II. Division Two. February 21, 1990.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*,
v. GERALD C. BAKER, ET AL, *Appellants*.

*John C. Etter,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Lisa Vincler, Assistant,* for respondent.

WORSWICK, J.—We are asked to decide whether the widow of a deceased worker who, because of an industrial injury, was permanently and totally disabled at the time of his death, is eligible for survivorship benefits where the worker's death was a deliberate and knowing suicide. We hold that the widow is entitled to benefits, and we reverse a trial court decision to the contrary.

Gerald Baker committed suicide on March 27, 1986. The Department of Labor and Industries denied his widow's application for survivor benefits because, it said, the death was the result of a "deliberate and conscious intent to take his own life" *and* because Mr. Baker was not a "permanently and totally disabled worker at the time of his death."[1]

The Board of Industrial Insurance Appeals agreed with the Department's conclusion as to the cause of death, but it found that Mr. Baker *was* permanently and totally disabled because of an industrial injury at the time of his death. It awarded survivorship benefits to Mrs. Baker. The Department appealed to superior court.

The court held that benefits were not available, concluding that RCW 51.32.050(6), under which the Board granted benefits, was overridden by RCW 51.32.020, which, the court found, bars all benefits following death by suicide. RCW 51.32.050(6) provides, in relevant part:

> For claims filed prior to July 1, 1986, if the injured worker dies during the period of permanent total disability, *whatever*

---

[1]Counsel for the widow at oral argument challenged the Department to explain why it made a finding that Mr. Baker was not, at the time of his death, permanently and totally disabled, if, as it now seems to, it contends that Mr. Baker's disability status at the time of his death was immaterial. The Department has offered no explanation.

*the cause of death,* leaving a surviving spouse . . . the surviving spouse . . . shall receive benefits as if death resulted from the injury . . ..[2]

RCW 51.32.020 provides, in relevant part:

*If injury or death results to a worker from the deliberate intention of the worker . . . to produce such injury or death . . . neither the worker nor the widow . . . shall receive any payment under this title.*

(Italics ours.)

 These statutory sections must be harmonized to give effect to the Legislature's intent. *Powell v. Department of Labor & Indus.,* 79 Wn.2d 378, 385, 485 P.2d 990 (1971); *Ginochio v. Hesston Corp.,* 46 Wn. App. 843, 846, 733 P.2d 551 (1987). We hold that RCW 51.32.020 bars survivor claims only when the intentionally caused death is the singular event for which compensation is claimed, and, under RCW 51.32.050(6), that the event upon which compensation is based is not the death, but the preexisting permanent and total disability caused by an industrial injury. Consequently, if a worker who is already permanently and totally disabled commits suicide, his widow is entitled to survivor benefits. Examination of the statutory language, the legislative history of the benefits provisions, and the case law supports our conclusion.

 First in the analysis, as always, is the language of the statute itself. Two familiar principles apply to this case: (1) where the Legislature used different language in different sections, it can be assumed that legislative intent was different (*United Parcel Serv., Inc. v. Department of Rev.,* 102 Wn.2d 355, 362, 687 P.2d 186 (1984)); and (2) plain words are to be given their plain meanings. *Northwest Steel Rolling Mills, Inc. v. Department of Rev.,* 40 Wn.

---

[2]The claim at issue was filed before July 1, 1986. Claims filed after that date are governed by RCW 51.32.050(7) and RCW 51.32.067, pursuant to which survivor benefits are paid in accordance with the option elected by the disabled worker.

App. 237, 698 P.2d 100, *review denied,* 104 Wn.2d 1006 (1985). The following insights emerge from an application of these principles here.

The two sections not only contain different language, they deal with different subjects. RCW 51.32.050(6) merely identifies those who are *eligible* for survivor benefits upon the death from any cause of a worker who was already receiving, or was eligible for, disability benefits. RCW 51.32.020, on the other hand, in the first instance is a bar to any benefits, *whether claimed by an injured worker or the survivor of a deceased worker,* if the injury *or* death was intentionally self–inflicted. Also, the phrase "whatever the cause of death" in RCW 51.32.050(6) plainly includes suicide. In sum, the language of the two sections alone indicates that the Legislature intended each section to deal with a different problem, not that one would override the other.

The legislative history of the statutory benefits provisions supports our view of the Legislature's intent. Significantly, the Legislature provided separately for survivor benefits for the two distinct compensable events from the original enactment of the Industrial Insurance Act in 1911 until 1986, although, at the outset, the amount of benefits was the same. *See* Laws of 1911, ch. 74, § 5(a)(1), (c). In 1919, the Legislature preserved the separate survivor benefit provisions but changed the compensation scheme by adding an additional lump sum award payable only where the death was a direct result of the industrial injury.[3] *See* Laws of 1919, ch. 131, § 4(a)(1). In 1971, the Legislature again amended the benefit scheme, preserving the separate benefits provisions but calculating benefits on a different basis and abolishing the disparity in benefit amounts created by the 1919 legislation. *See* Laws of 1971, 1st Ex.

---

[3]Initially, the lump sum was made payable only in those cases where the burial costs had not exceeded the statutory amount allocated for those expenses. *See* Laws of 1919, ch. 131, § 4(a)(1). A 1923 amendment removed this condition and made the additional amount payable whenever death was a direct result of the industrial injury. *See* Laws of 1923, ch. 136, § 2(a)(1).

Sess., ch. 289, § 7. Finally, in 1986 the Legislature merged the survivor compensation provisions and amounts into a single scheme, requiring all workers eligible for permanent and total disability benefits to elect a survivor benefits option. That election controlled survivor benefits for which claims were made after the effective date of the act. *See* Laws of 1986, ch. 58, §§ 3, 4.

The case law, although not decisive, is also instructive. Litigation concerning entitlement to survivor benefits in general has always involved a formula consisting of two questions: (1) Did an industrial injury cause the death? *or* (2) At the time of death, was the decedent permanently and totally disabled because of an industrial injury *regardless of the cause of death*? The eligible survivor was entitled to benefits if either question was answered yes. *Noland v. Department of Labor & Indus.*, 43 Wn.2d 588, 589, 262 P.2d 765 (1953).

No Washington case deals with the precise issue presented in this case, but the suicide cases, litigated under RCW 51.32.020, are not inconsistent with this formula. The only issue considered in any case decided before now has been whether the suicide was "involuntarily" produced because of an industrial injury, or whether it was the volitional act of the worker. No case has denied benefits where, as here, the decedent already was permanently and totally disabled from an industrial injury at the time of his death, even though his suicide was volitional. *See Hepner v. Department of Labor & Indus.*, 141 Wash. 55, 250 P. 461 (1926) (injury for which time loss was being received caused insanity that, in turn, caused decedent to walk in front of a train; benefits allowed); *Gatterdam v. Department of Labor & Indus.*, 185 Wash. 628, 56 P.2d 693 (1936) (worker under treatment for crushed toe shot himself; evidence sufficient to show suicide caused by insanity that was caused by injury); *McFarland v. Department of Labor & Indus.*, 188 Wash. 357, 62 P.2d 714 (1936) (worker with partial disability; suicide by hanging; evidence sufficient to support finding that suicide produced by insane impulse caused by

injury); *Karlen v. Department of Labor & Indus.*, 41 Wn.2d 301, 249 P.2d 364 (1952) (evidence supported causal connection between manic–depressive illness, resulting in suicide, and thumb injury); *Schwab v. Department of Labor & Indus.*, 69 Wn.2d 111, 417 P.2d 613 (1966) (*Schwab* I); (evidence sufficient to support connection between suicide and injury; trial court reversed); *Mercer v. Department of Labor & Indus.*, 74 Wn.2d 96, 442 P.2d 1000 (1968) (insufficient evidence to support causal connection between hand injury, for which worker was receiving treatment, and suicide); *Schwab v. Department of Labor & Indus.*, 76 Wn.2d 784, 459 P.2d 1 (1969) (*Schwab* II); (verdict allowing benefits because of connection between suicide and industrial injury affirmed).

Only two of these cases merit discussion and one, *McFarland,* only briefly. The *McFarland* court said:

> The question raised by the findings and conclusions is whether the workman came to his death as a the result of deliberate intention to commit suicide. That question is a vital one, because [RCW 51.32.020] provides that, if injury or death results to a workman from his deliberate intention to produce such injury or death, neither the workman nor his widow, . . . shall receive any payment whatsoever out of the accident fund.

*McFarland,* 188 Wash. at 359–60. The Department offers this statement as primary support for its position here. However, the issue presented in this case was not involved in *McFarland,* and nothing else in the opinion suggests that the statement is anything more than the court's paraphrase of the statute, now RCW 51.32.020, that controls cases in which the death is the event for which compensation is claimed.

Of some import, however, is *Schwab* II in which the court surveyed the entire line of suicide cases and concluded by observing that, through a process of evolution, it had moved away from traditional concerns about the volitional element of suicide as such and now regarded RCW 51.32-.020 simply as a statutory bar between cause and proximate result. The court went on to restate the issue in suicide

cases as simply whether the industrial injury was the cause of the death. *Schwab* II, 76 Wn.2d at 791–92. The *Schwab* II analysis, considered in its context (that the decedent was not permanently and totally disabled at the time of death), is consistent with our conclusion that RCW 51.32.020 has limited application.

In short, by every indication of legislative intent and judicial interpretation, Mr. Baker's widow is entitled to survivor benefits.

Reversed.

ALEXANDER, C.J., and REED, J., concur.