# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOSHUA W. PETERSON, | No. 53885-7-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Joshua Peterson was injured on a barge in maritime jurisdiction in 2011, and received both an award of benefits from the Department of Labor and Industries (DLI) and a settlement under federal maritime law. DLI ordered Peterson to repay a portion of his state benefits in accordance with RCW 51.12.100. That statute provides that a claimant shall repay benefits paid under the state workers' compensation scheme when payments are also made under the federal maritime scheme. An Industrial Appeals Judge (IAJ) upheld DLI's order, and the Board of Industrial Insurance Appeals (Board) affirmed. The superior court affirmed the Board.

Peterson seeks to retain his double recovery. He appeals the superior court decision, arguing that the trial court erred when it affirmed the Board's decision because (1) the order allowing the initial award under the state scheme was final, (2) DLI's actions prevent it from arguing that the Industrial Insurance Act (IIA), Title 51 RCW, does not apply to his claim, and

(3) RCW 51.52.104 prohibits the Board from altering unchallenged conclusions of law.[1]  In the alternative, Peterson argues that (4) DLI is limited to recouping benefits previously paid at the time of concurrent receipt of maritime benefits under RCW 51.12.100(4), and (5) the superior court erred when it awarded DLI statutory costs and fees.  We find no error and affirm.

FACTS

I. INJURY AND CLAIMS

A.      *State Workers' Compensation Claim*

In December 2011, Peterson injured his back while working for his employer on a barge in navigable waters.  Peterson filed a workers' compensation claim with DLI.  Peterson reported to DLI that he was performing "rigging [and] general labor."  2 Administrative Record (AR) at 580.  Nothing in his report identified the claim as maritime in nature.

DLI issued an allowance order and began paying Peterson benefits.  DLI's Notice of Decision explained that the allowance order became final 60 days from the date it was communicated to Peterson unless he filed for reconsideration.  No party appealed this allowance order.  Over the next several years, DLI paid Peterson $89,482.47 in time-loss compensation and $25,700.20 in medical aid.

B.      *Federal Maritime Claims*

Peterson also sought compensation under federal maritime laws, filing a claim under the Longshore and Harbor Worker's Compensation Act (LHWCA) and filing a third-party

---

[1] RCW 51.52.104 provides that parties who fail to petition for review of an IAJ's decision "shall be deemed to have waived all objections."

negligence claim under the Jones Act.[2,3] The IIA does not apply to a "master or member of a crew of any vessel, or to employers and workers for whom a right or obligation exists under the maritime laws or federal employees' compensation act for personal injuries or death of such workers." RCW 51.12.100(1). The IIA additionally allows DLI to recover payments made to such a worker, providing:

> In the event payments are made both under this title and under the maritime laws or federal employees' compensation act, such benefits paid under this title shall be repaid by the worker or beneficiary. For any claims made under the Jones Act, the employer is deemed a third party, and the injured worker's cause of action is subject to RCW 51.24.030 through 51.24.120.[4]

RCW 51.12.100(4).

In March 2015, DLI informed Peterson it would seek reimbursement of his state benefits when he received a settlement for his maritime claims. In June, in accordance with RCW 51.12.100(4), DLI rejected Peterson's December 2011 claim and issued an overpayment order based on his LHWCA and Jones Act payments. Peterson appealed this June 2015 order to the Board.

---

[2] The LHWCA provides relief to workers employed and injured in shore- and harbor-centered maritime occupations. *Gorman v. Garlock, Inc.*, 155 Wn.2d 198, 205, 118 P.3d 311 (2005); 33 U.S.C. § 902(3).

[3] The Jones Act provides tort remedies to certain injured maritime workers based on an employer's negligence. *Gibson v. Am. Constr. Co., Inc.*, 200 Wn. App. 600, 603 n.2, 402 P.3d 928 (2017); 46 U.S.C. § 30104.

[4] RCW 51.24.030 through RCW 51.24.120 allow an injured worker to seek third party damages against a third party who is not the worker's employer, provide for reimbursement and distribution to DLI or self-insurer in the event of a recovery, and allow for a settlement to DLI for less than benefits paid by the third party.

## II. PROCEDURAL HISTORY

In December, Peterson and DLI entered into an agreement before an IAJ. Peterson stipulated that he sought benefits under maritime law, but that the final determination had not been made on those claims, and he had not received compensation under any federal scheme. DLI agreed to pay provisional benefits pending the outcome of Peterson's maritime claims and continued to pay Peterson interlocutory payments pending the resolution of his maritime claims.

In March 2016, Peterson told DLI's third-party adjudicator that settlement of his maritime claims was imminent. Peterson stated that the portion of the settlement allocated to the Jones Act claim would be $90,000. DLI's adjudicator agreed that $25,000 would satisfy DLI's share of the Jones Act recovery under RCW 51.12.100(4) and 51.24.030 through 51.24.120. DLI then issued an order distributing the $90,000 Jones Act award among Peterson, his attorneys, and DLI. After DLI received the $25,000, it determined the remaining outstanding balance Peterson owed under RCW 51.12.100(4) from his LHWCA settlement was $72,450.89.

In April, Peterson settled both his LHWCA and Jones Act claims for a combined amount of $900,000. DLI was not a party to the settlement. The United States Department of Labor approved the settlement in May. From the record on appeal, it appears that some time passed between the federal approval and DLI's learning about the settlement.

In September, DLI issued an overpayment order "correct[ing] and supersed[ing]" its prior orders, rejecting Peterson's claim, and requiring Peterson pay the remaining $72,450.89 to DLI. 2 AR at 623. Peterson requested that DLI reconsider this order. On December 9, DLI affirmed

the overpayment order, and again rejected Peterson's 2011 claim. Peterson appealed the December 9 order.[5]

The IAJ issued a Proposed Decision and Order (PD&O) in February 2018. The IAJ determined that DLI was entitled to the remaining $72,450.89. In conclusion of law 2, the IAJ found that the December 2011 allowance order was final. However, in conclusion of law 5 the IAJ determined that "[p]ursuant to RCW 51.12.100(4), [DLI] is entitled to repayment of the balance of time-loss compensation paid to Mr. Peterson in the amount of $72,450.89." 1 AR at 65. In conclusion of law 6, the IAJ remanded the issue to DLI to resolve by "closing rather than rejecting the claim." 1 AR at 65.

Peterson petitioned for review. In his petition, he requested the Board review the PD&O, specifically disputing five findings of fact and "the associated Conclusions of Law." 1 AR at 23. Peterson did not specifically challenge conclusion of law 5 or DLI's statutory right to recovery under RCW 51.12.100(4). DLI did not seek review of this PD&O.

In May 2018, the Board accepted review and affirmed all of the IAJ's findings and conclusions, with the exception of conclusion of law 6. Although neither party contested conclusion of law 6, the Board stated that it had granted review "solely to correct Conclusion of Law No. 6." 1 AR at 4. The Board reversed the IAJ's PD&O on that point, concluding that DLI correctly rejected Peterson's claim under RCW 51.12.100. In its decision, the Board relied on *Rhodes v. Department of Labor & Industries*, 103 Wn.2d 895, 898, 700 P.2d 729 (1985). The

---

[5] Peterson's notice claims that DLI had agreed to limit repayment to the $25,000 from his Jones Act recovery. He has abandoned this issue on appeal.

Board's decision stated, "The settlement of Mr. Peterson's maritime claims established that he was entitled to federal coverage rather than coverage through Washington's industrial insurance laws. Thereafter, [DLI] was correct in rejecting the claim that had previously been allowed. RCW 51.12.100." 1 AR at 8.

Peterson appealed to the superior court, arguing that *Rhodes* did not apply. Peterson also argued that DLI's right of reimbursement was limited by RCW 51.32.240(3), which states that certain claims must be *rejected* for DLI to seek reimbursement, and because DLI had not appealed conclusion of law 6, the claim could only be *closed*. Thus, Peterson argued that because his claim could not be rejected, DLI is not entitled to reimbursement.

The superior court disagreed and adopted the Board's conclusions of law. The superior court found that "[DLI]'s lien was $72,450.89, recoverable under RCW 51.12.100(4) from his . . . LHWCA entitlement." Clerk's Papers (CP) at 76. In its opinion, the superior court explained that, despite the decision becoming final within 60 days if not appealed, the award in this case was "never adjudicated or final" because the "statute expressly provides that benefits *shall* be repaid if recovery is subsequently made under Federal Maritime law (LHWCA)." Suppl. CP at 86. The superior court also noted that DLI has "the ability to reject a prior allowance order and reject the claim to enable or ensure the purpose of the reimbursement reservation." Suppl. CP at 86. The superior court affirmed the Board's decision and awarded DLI attorney fees.

Peterson appeals.

## ANALYSIS

Peterson argues that he is entitled to double recovery of state workers' compensation benefits plus federal maritime benefits. He claims that because DLI's December 2011 allowance

order was final and not appealed, res judicata bars DLI from seeking repayment. But his argument is contrary to settled law. He also argues that because DLI did not deny his claim in December 2011, it could not later reject it unless DLI lacked "subject matter jurisdiction" to award the claim in the first place. Br. of Appellant at 37. But this statutory construction would render the recoupment language in RCW 51.12.100(4) meaningless.

Peterson also argues that the Board improperly increased its scope of review when it addressed conclusion of law 6, and that waiver prevents DLI from now defending the Board's decision. However, the Board had authority to address the conclusion because it was an issue Peterson raised in his petition, and thus, whether the claim could be rejected was an issue on review. Finally, he claims that the IIA does not allow DLI to recover statutory attorney fees. We reject all of Peterson's arguments and affirm the superior court order.

## I. REIMBURSEMENT OF BENEFITS FROM A FINAL ALLOWANCE ORDER UNDER RCW 51.12.100

Peterson argues that because the IAJ concluded that the December 2011 allowance order was final and because DLI did not challenge that conclusion, DLI was barred from rejecting Peterson's claim. We disagree.

### A. *Standard of Review*

In appeals under the IIA, we review the superior court's decision and apply the ordinary civil standards of review. RCW 51.52.140; *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009). We review whether substantial evidence supports the superior court's factual findings, and we review de novo whether the superior court's conclusions of law flow from those findings. *Rogers*, 151 Wn. App. at 180; *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5-6, 977 P.2d 570 (1999).

This case involves issues of statutory interpretation. When interpreting IIA statutes, we give great weight to DLI's interpretation of the IIA, and we liberally construe the IIA to achieve the legislature's intent. *Jones v. City of Olympia*, 171 Wn. App. 614, 621, 287 P.3d 687 (2012); *Hopkins v. Dep't of Labor & Indus.*, 11 Wn. App. 2d 349, 353, 453 P.3d 755 (2019).

In determining the legislature's intent, we derive the plain meaning of the statute from the "'context of the entire act as well as any related statutes which disclose legislative intent about the provision in question.'" *Hopkins*, 11 Wn. App. 2d at 353 (internal quotation marks omitted) (quoting *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014)). We interpret statutes so that all language is given effect and no portion is "'rendered meaningless or superfluous,'" and we read statutory sections harmoniously to give effect to the legislature's intent. *Gorman v. Garlock*, 155 Wn.2d 198, 210, 118 P.3d 311 (2005) (internal quotation marks omitted) (quoting *Davis. v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999)); *Dep't of Labor & Indus. v. Baker*, 57 Wn. App. 57, 59, 786 P.2d 821 (1990). Additionally, we interpret statutes so as to avoid absurd or unlikely consequences. *Hopkins*, 11 Wn. App. 2d at 353.

B.      *Legal Principles*

The Legislature adopted RCW 51.12.100 in 1975 "[t]o protect the State's industrial insurance funds." *Rhodes*, 103 Wn.2d at 898; LAWS OF 1975, 1st Ex. Sess., ch. 224, § 3, p. 734. To achieve this goal, subject to limited exceptions, the IIA does not apply to claimants covered by federal maritime law.

RCW 51.12.100(1) provides:

Except as otherwise provided in this section, the provisions of [the IIA] shall not apply to a master or member of a crew of any vessel, or to employers and workers

for whom a right or obligation exists under the maritime laws or federal employees' compensation act for personal injuries or death of such workers.

Under RCW 51.52.050, allowance orders that are not appealed or challenged within 60 days become "final." However, RCW 51.12.100(4) provides:

In the event payments are made *both under this title and under the maritime laws* or federal employees' compensation act, such *benefits paid under this title shall be repaid* by the worker or beneficiary. For any claims made under the Jones Act, the employer is deemed a third party, and the injured worker's cause of action is subject to RCW 51.24.030 through 51.24.120.

(Emphasis added.)

In *Rhodes*, our Supreme Court interpreted RCW 51.12.100 and held that a worker who receives payment under both the state scheme and the federal maritime scheme must repay DLI under the statute, even where the allowance order was final.[6] 103 Wn.2d at 898. In *Rhodes*, DLI allowed a worker's claim and the allowance order became final when it was not appealed. 103 Wn.2d at 896. Our Supreme Court required Rhodes to reimburse DLI, holding, "There is nothing in the statute limiting reimbursement only to benefits paid pursuant to interlocutory orders. All benefits, *whether granted under interlocutory or final orders*, '*shall be repaid*.'" *Rhodes*, 103 Wn.2d at 898 (emphasis added) (quoting RCW 51.12.100). The *Rhodes* court went on to explain that although a decision may become "final" under RCW 51.52.050, where a claimant subsequently recovers under federal maritime law, RCW 51.12.100 expressly provides

---

[6] The *Rhodes* court interpreted the language of former RCW 51.12.100 (1975) as it existed in 1985. 103 Wn.2d at 898. At that time, subsection (4) read, "In the event payments are made under this title prior to the final determination under the maritime laws, such benefits shall be repaid if recovery is subsequently made under the maritime laws." Former RCW 51.12.100(4); *Rhodes*, 103 Wn.2d at 898.

the claimant shall repay and that the state allowance order is *not* "final" for purposes of res judicata. 103 Wn.2d at 899.

Our Supreme Court has noted elsewhere that the IIA does not apply to employers or workers covered under the LHWCA and that where state payments are made prior to a determination that the employee is covered under LHWCA, the employee must repay the benefits. *Stevedoring Servs. of Am., Inc. v. Eggert*, 129 Wn.2d 17, 34 n.5, 914 P.2d 737 (1996). "The legislature's intent in excluding LHWCA-covered workers from the [IIA] was 'to prevent double recovery' . . . and thereby 'protect the state's industrial insurance fund when a worker is adequately covered under the LHWCA.'" *Gorman*, 155 Wn.2d at 208-09 (quoting *Esparza v. Skyreach Equip., Inc.*, 103 Wn. App. 916, 938, 15 P.3d 188 (2000); and *E.P. Paup Co. v. Dir., Office of Workers Comp. Programs, U.S. Dep't of Labor*, 999 F.2d 1341, 1348 n.3 (9th Cir. 1993)); *accord Rhodes*, 103 Wn.2d at 898.

C.      *Final Order Does Not Preclude Reimbursement*

Peterson argues that because the December 2011 allowance order was final, DLI failed to preserve its challenge on appeal. Peterson argues that because the allowance order was final, DLI cannot later reject his claim. He also appears to argue that DLI, by not appealing the IAJ's conclusion that the December 2011 order was final, is estopped by res judicata from seeking reimbursement. We disagree.

In *Rhodes*, which is directly on point, the claimant was injured while working in an underwater setting. 103 Wn.2d at 896. Rhodes filed a claim with DLI and subsequently filed a claim under the LHWCA. *Rhodes*, 103 Wn.2d at 896. DLI granted Rhodes benefits in an order that stated appeals must be made within 60 days "or the same shall become final." *Rhodes*, 103

10

Wn.2d at 897; *see* RCW 51.52.050. No party appealed. *Rhodes*, 103 Wn.2d at 897. One year after this award, Rhodes' LHWCA claim was allowed. *Rhodes*, 103 Wn.2d at 897. DLI then issued an order seeking reimbursement of time-loss and medical expenses it paid to Rhodes. *Rhodes*, 103 Wn.2d at 897.

Rhodes appealed, arguing that because no party had appealed the "final" order, his rights to money granted under those orders were "fixed" and subject to res judicata, despite the language of RCW 51.12.100. *Rhodes*, 103 Wn.2d at 898. Our Supreme Court disagreed.

Our Supreme Court held that RCW 51.12.100 allows DLI to recover reimbursement regardless of whether the order was final. *Rhodes*, 103 Wn.2d at 898. The court stated, "All benefits, whether granted under interlocutory *or final orders*, 'shall be repaid.'" *Rhodes*, 103 Wn.2d at 898 (emphasis added) (quoting RCW 51.12.100). The court explained that at the time DLI ordered Rhodes's benefits it "had no way of knowing whether he was covered by the LHWCA." *Rhodes*, 103 Wn.2d at 899. Therefore, DLI "did not, and could not, determine Rhodes'[s] case was 'final' for the purposes of res judicata." *Rhodes*, 103 Wn.2d at 899.

Peterson argues that *Rhodes* does not apply and has been overruled. But *Rhodes* is squarely on point and has not been overruled. Peterson, like Rhodes, filed a claim with DLI then subsequently filed federal maritime claims. DLI issued Peterson an allowance order which no party challenged within 60 days. It therefore became a "final" order. RCW 51.52.050. Peterson's maritime claim was settled more than a year after the allowance order granting benefits under the state scheme became final. DLI then sought reimbursement under RCW 51.12.100(4). Even Peterson's arguments mirror those raised in *Rhodes*.

11

Accordingly, the superior court was correct when it ruled that the award in this case was "never adjudicated or final" because the "statute expressly provides that benefits *shall* be repaid if recovery is subsequently made under Federal Maritime law (LHWCA)." Suppl. CP at 86 (emphasis in original). As in *Rhodes*, the award here was not, and could not, be "final" for the purposes of res judicata.

Peterson also misstates the holding of *Rhodes*, arguing that under *Rhodes* the December 2011 order was "not final, in fact and law," and that therefore "[DLI] does have the authority to later reject the claim." Br. of Appellant at 13. The core holding of *Rhodes* is that DLI can seek reimbursement under RCW 51.12.100(4) regardless of finality for the purposes of res judicata. 103 Wn.2d at 889. Here, as in *Rhodes*, DLI had "no way of knowing" whether Peterson would be covered by maritime law. But once that decision is made in the affirmative, RCW 51.12.100(1) applies, and the IIA "shall not apply." Thus, in accordance with *Rhodes* and RCW 51.12.100(4), the award "shall be repaid."

Peterson argues that *Rhodes* has been overruled, although he fails to point to any case from our Supreme Court overruling the case. Our Supreme Court has not overruled *Rhodes*, and has made clear that it does "not overrule . . . binding precedent *sub silentio*." *State v. Studd*, 137 Wn.2d 533, 548, 973 P.2d 1049 (1999). We are bound to follow Supreme Court precedent. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 590, 146 P.3d 423 (2006). Thus, we reject Peterson's invitation to ignore *Rhodes*.

Peterson also argues that DLI's failure to petition the Board to review conclusion of law 2 prohibits DLI from claiming that the December 2011 allowance order was not final under RCW 51.12.100. We disagree.

12

Peterson's argument is flawed because it is based on the IAJ's conclusion of law 2, (which concluded that the December 2011 allowance order was final) to the exclusion of the IAJ's conclusion of law 5 (which concluded, "Pursuant to RCW 51.12.100(4), [DLI] is entitled to repayment of the balance of time-loss compensation paid to Mr. Peterson in the amount of $72,450.89." 1 AR at 65.). Both of these conclusions were affirmed by the Board and adopted by the superior court. Thus, DLI had no reason to cross appeal. Under RCW 51.12.100 and *Rhodes*, DLI was entitled to seek repayment of benefits paid after the allowance order *regardless* of finality. Conclusion of law 2 was beside the point for the purposes of reimbursement because conclusion of law 5 rightly preserved DLI's ability to seek reimbursement.

Because *Rhodes* applies and DLI is entitled to seek reimbursement under RCW 51.12.100(4), we hold that DLI was not prohibited from seeking reimbursement based on Peterson's argument that the December 2011 order was final.

D.      *Conclusion of Law 6 Properly Considered*

Peterson next argues that the Board improperly exceeded its scope of review when it reversed the IAJ's conclusion of law 6 and concluded that DLI was correct in rejecting Peterson's claim. He argues that this is error because the Board's review is strictly limited to the specific issues raised in his petition for review. And he argues a limited definition of "issues," claiming that because conclusion of law 6 was not raised on appeal in Peterson's petition, and DLI did not appeal, the Board could not address conclusion of law 6. We disagree and hold that

13

the Board was authorized to consider conclusion of law 6 because the conclusion was an issue Peterson raised in his petition.[7]

RCW 51.52.020 provides that the Board "may not delegate to any other person its duties of interpreting the testimony and making the final decision and order on appeal cases." And under RCW 51.52.106, "the proposed decision and order of the [IAJ], petition or petitions for review and, in its discretion, the record or any part thereof, may be considered by the [B]oard." However, our Supreme Court has held that the Board cannot enlarge the lawful scope of its review, which is "limited strictly to the issues raised by the notice of appeal." *Brakus v. Dep't of Labor & Indus.*, 48 Wn.2d 218, 220, 292 P.2d 865 (1956). The issue here is what "issue" must be raised by the notice of appeal for the Board to consider it: the specific conclusion of law, which reads, "[DLI]'s December 9, 2016 order is incorrect, and this matter is remanded to [DLI] to issue an order closing rather than rejecting the claim," or the broader issue of reimbursement, which Peterson argues is dependent on this conclusion. 1 AR at 65.

The Board has consistently held that the scope of its review is not limited to the *specific* issues raised by a Petition for Review. *In re Richard W. Sims*, BIIA, No. 85-1748, at 3 (Wash. Bd. Indus. Ins. Appeals Oct. 29, 1986); *In Re Flavio Salas*, BIIA, No. 18 36007, 2020 WL 916809, *2 (Wash. Bd. of Indus. Ins. Appeals Jan. 14, 2020) ("[O]ur scope of review extends to all contested issues of law and fact and is not limited to the specific issues raised by the Petition

---

[7] DLI argues that Peterson waived arguments on the Board's scope of review because he did not raise them in his petition for review. But we consider these arguments because Peterson raised the issue in a supplemental brief to the Board and also raised this argument in his trial brief in the superior court.

for Review."). Although administrative decisions are not binding on this court, we recognize significant decisions of the Board as persuasive authority in interpreting the IIA. *O'Keefe v. Dep't of Labor & Indus.*, 126 Wn. App. 760, 766, 109 P.3d 484 (2005). And we grant the Board's interpretation of the IIA great deference. *Value Vill. v. Vasquez-Ramirez*, 11 Wn. App. 2d, 590, 596, 455 P.3d 216 (2019), *review denied*, 195 Wn.2d 1017 (2020).

Importantly, as discussed in more detail below, Peterson argues that conclusion of law 6 is critical to his argument that under RCW 51.32.240 DLI cannot seek reimbursement unless the claim is rejected. Regardless of whether this argument would carry the day, this argument put the conclusion of law squarely before the Board. If this conclusion is integral to one of his arguments on appeal, it follows that it is an issue raised in his petition.

Peterson cites to *Brakus* for the contention that the Board "cannot enlarge the lawful scope of the proceedings, which is limited strictly to the issues raised by the notice of appeal." 48 Wn.2d at 220. In *Brakus*, DLI closed a worker's claim. 48 Wn.2d at 219. The worker appealed the closing order on the sole ground he was entitled to a greater disability award. *Brakus*, 48 Wn.2d at 219. The Board found that the worker did not establish his injury was the result of the industrial injury. *Brakus*, 48 Wn.2d at 219. The Board reversed the closing order and ordered DLI to deny the entire disability award. *Brakus*, 48 Wn.2d at 219. Our Supreme Court reversed, holding that the Board erred because Brakus's appeal was limited to whether or not he was entitled to a greater disability award, and the Board went beyond this issue when it vacated the disability award. *Brakus*, 48 Wn.2d at 220.

*Brakus* is distinguishable. The issue raised in the petition for review in *Brakus* was limited to the percentage of the employee's permanent disability. 48 Wn.2d at 219. That the

employee was entitled to disability was based on a final, unappealed order.[8] *Brakus*, 48 Wn.2d at 219-20. Here, Peterson appealed the entire overpayment order to the Board. In his petition for review, he requested the Board review the PD&O, and after naming specific findings of fact, disputed generally the "associated Conclusions of Law." 1 AR at 23. Thus, the Board's decision to modify conclusion of law 6 fell within the issues raised in the petition for review.

Peterson also relies on *Homemakers Upjohn v. Russell*, 33 Wn. App. 777, 778, 658 P.2d 27 (1983), to support his argument that the Board improperly increased its scope of review, and ties this to his argument below that DLI was "aggrieved" and thus required to petition for review. Br. of Appellant at 17. But *Upjohn* is factually distinguishable because the issue there was whether an employer who did not petition for review was entitled to seek *judicial review* of the Board's decision. 33 Wn. App. at 778.

Peterson then cites *Sepich v. Department of Labor & Industries*, 75 Wn.2d 312, 317, 450 P.2d 940 (1969), and *Value Village v. Vazquez-Ramirez*, 11 Wn. App. 2d at 606, *review denied* 195 Wn.2d 1017 (2020), to argue that the failure to raise an issue to the Board constitutes waiver on appeal. Those cases are not apt. *Sepich* discussed the procedure of trial de novo in superior court, not the Board's authority to review a PD&O. 75 Wn.2d at 316-17. And *Value Village* addresses the rule that an appellant must raise an issue before the Board to preserve it on appeal. 11 Wn. App. 2d at 606.

---

[8] Unlike here, there was no separate statute allowing for reimbursement even after a final order issued.

We hold that the Board did not "enlarge the scope of proceedings" by reaching outside of the record or addressing issues outside DLI's order, but instead reviewed the PD&O based on its statutory authority and the issues raised in Peterson's petition for review.

Peterson next argues that DLI's failure to petition for review of the IAJ's order constitutes a waiver to all of the IAJ's conclusions of law. Thus, Peterson argues that RCW 51.52.104 prohibits the Board from altering unchallenged conclusions of law. We disagree.

RCW 51.52.104 governs petitions for review. It provides that within twenty days of the IAJ's decision,

> any party may file with the board a written petition for review of the same. . . . Such petition for review shall set forth in detail the grounds therefor and the party or parties filing the same shall be deemed to have waived all objections or irregularities not specifically set forth therein.

RCW 51.52.104.

Appeals from the Board to the superior court are governed by a different section of the IIA. RCW 51.52.110 provides:

> [W]ithin thirty days after the final decision and order of the board upon such appeal has been communicated to such worker, beneficiary, employer or other person, . . . such worker, beneficiary, employer or other person *aggrieved by the decision and order* of the board may appeal to the superior court. If such worker, beneficiary, employer, or other person fails to file with the superior court its appeal as provided in this section within said thirty days, the decision of the board to deny the petition or petitions for review or the final decision and order of the board shall become final.

(Emphasis added.) RCW 51.52.110 does not mention waiver.

Peterson's argument that DLI's failure to petition for review of the IAJ's order constitutes a waiver fails for several reasons. First, as discussed above, Peterson raised this issue in his petition for review, and thus, it was properly before the Board and not waived.

Second, Peterson's argument is based on an incorrect premise. He argues DLI should have filed a petition for review because it was "aggrieved" by the IAJ's conclusion of law 6. Br. of Appellant at 15. But the term "aggrieved" applies to appeals to the superior court, not petitions for review by the Board. *Compare* RCW 51.52.104, *with* 51.52.110.

DLI was not aggrieved by the IAJ's decision. The PD&O authorized DLI to seek reimbursement. Likewise, because of conclusion of law 5 and our Supreme Court's decision in *Rhodes*, DLI had no reason to petition the Board for review of the PD&O; it was entitled to reimbursement. After Peterson petitioned for review of the PD&O, the Board reviewed conclusion of law 6 sua sponte.

Even assuming, *arguendo*, that DLI waived any objection to the PD&O, DLI would nonetheless be able to seek reimbursement under RCW 51.12.100(4). Conclusion of law 5 properly granted DLI authority to seek repayment. Therefore, even if we were to reverse the superior court, the net result would be to remand to DLI for repayment under RCW 51.12.100(4) and conclusion of law 5. For the purposes of repayment under RCW 51.12.100, it does not matter whether DLI "closes" or "rejects" the original allowance order. Thus, contrary to Peterson's contention that DLI was "aggrieved," DLI had no reason to petition for review because it is entitled to repayment in either case. Therefore, as explained above, under RCW 51.12.100(1), the IIA does not apply to Peterson's claim.

E.      *RCW 51.12.100 Applies to Maritime Injuries and Is Not Limited by RCW 51.32.240*

Peterson further argues that DLI conceded that it may assess an overpayment and recoup benefits only through claim rejection and under RCW 51.32.240(3). He claims DLI conceded this when it stated in its brief in the superior court that RCW 51.12.100 "becomes effective only

when DLI cancels an allowed claim and is seeking to recoup benefits it has already paid." Br. of Appellant at 20. We hold that DLI's ability to seek reimbursement from claimants covered by maritime law is not limited by RCW 51.32.240.

RCW 51.32.240(3) states:

Whenever [DLI] issues an order rejecting a claim for benefits paid pursuant to RCW 51.32.190 or 51.32.210, after payment for temporary disability benefits has been paid by a self-insurer pursuant to RCW 51.32.190(3) or by [DLI] pursuant to RCW 51.32.210, the recipient thereof *shall repay such benefits and recoupment may be made* from any future payments due to the recipient on any claim with the state fund or self-insurer, as the case may be.

(Emphasis added.) Peterson appears to argue that because DLI did not argue that the IAJ's conclusion of law 6 was incorrect (or because the Board was wrong to modify that conclusion), then the IAJ's determination that DLI's order rejecting the claim should be reversed prevails. Therefore, Peterson argues if the claim must be closed and not rejected, then RCW 51.32.240(3) does not apply, and DLI is not entitled to reimbursement. This argument fails for three reasons.

First, as explained above, under *Rhodes* and RCW 52.12.100, DLI is entitled to reimbursement in maritime cases where double payment occurs regardless of the finality of the original order. 103 Wn.2d at 889. RCW 52.12.100(1) mandates that "the provisions of this title [the IIA] shall not apply to a . . . member of a crew of any vessel, or to employers and workers for whom a right or obligation exists under the maritime laws or federal employees' compensation act for personal injuries or death of such workers." If provisions of Title 51—the IIA—do not apply, then nothing under the IIA except RCW 51.12.100 applies to Peterson. Accordingly, where the claimant receives payments under maritime law, DLI is entitled to repayment under RCW 51.12.100(4) and not 51.32.240(3).

This undercuts Peterson's argument that "[DLI] may only recoup such benefits through claim rejection and use of RCW 51.32.240(3)." Br. of Appellant at 20. DLI may also recoup benefits under RCW 51.12.100(4) when the claimant receives payments under maritime law. Because Peterson's award was never "final," for purposes of recoupment here, implicit in RCW 51.12.100(4) is the power to cancel, reverse, or reject an allowance order when a claimant subsequently makes recovery under maritime law. *See Rhodes*, 103 Wn.2d at 899.

Second, as explained above, the Board had the authority to modify the PD&O under RCW 51.52.106. The superior court affirmed the Board. Following *Rhodes*, the superior court did not err because RCW 51.12.100 grants DLI the authority to seek repayment. Thus, the superior court's order affirming DLI's rejection of Peterson's claim was correct.

Third, RCW 51.12.100 and RCW 51.32.240 operate in the same way but apply in different circumstances. As the plain language of RCW 51.12.100(4) denotes, it applies "[i]n the event payments are made both under this title [the IIA] and under the maritime laws or federal employees' compensation act." In contrast, RCW 51.32.240 applies "[w]henever any payment of benefits under this title is made because of clerical error, mistake of identity, innocent misrepresentation by or on behalf of the recipient thereof mistakenly acted upon, or any other circumstance of a similar nature, all not induced by willful misrepresentation." RCW 51.32.240(1).

Our Supreme Court explained in *Birrueta v. Department of Labor & Industries* that RCW 51.32.240 gives DLI authority to change a final wage order as a "necessary incident to recoupment." 186 Wn.2d 537, 553, 379 P.3d 120 (2016). But as RCW 51.32.240 makes clear, it applies in situations of erroneous payments, willful misrepresentation, etc. RCW 51.12.100

applies to maritime occupations when payments are made under both the IIA and federal maritime laws. RCW 51.12.100(4). Indeed, the IIA does not apply when the claimant is a member of a crew of a vessel and maritime law applies. RCW 51.12.100(1). Because Peterson's injury and claim fell under maritime laws, the only portion of the IIA that applies is RCW 51.12.100, and DLI need not cancel or reject the allowance order to seek reimbursement—under the statute DLI shall be repaid. *See Rhodes*, 103 Wn.2d at 899.

Peterson also argues that RCW 51.32.240 is more specific than RCW 51.12.100, and therefore, RCW 51.32.240 must govern. Peterson would have us limit DLI's ability to collect under RCW 51.12.100 to the circumstances listed in RCW 51.32.240. We disagree.

We interpret statutes so that all language is given effect and no portion "'rendered meaningless or superfluous.'" *Gorman*, 155 Wn.2d at 210 (internal quotation marks omitted) (quoting *Davis*, 137 Wn.2d at 963). When interpreting conflicting statutory provisions, we generally give preference to the "'more specific and recently enacted statute.'" *Gorman*, 155 Wn.2d at 210 (quoting *Tunstall v. Bergeson*, 141 Wn.2d 201, 211, 5 P.3d 691 (2000)). We also read statutory sections harmoniously to give effect to the legislature's intent. *Baker*, 57 Wn. App. at 59. We interpret statutes to avoid absurd or unlikely consequences. *Hopkins*, 11 Wn. App. 2d at 353.

Applying the statutes as Peterson argues would result in RCW 51.12.100 being rendered superfluous. If that section is limited by RCW 51.32.240, then it has no meaning: only RCW 51.32.240 would ever apply. Both statutes were adopted the same year and during the same legislative session. LAWS OF 1975, 1st Ex. Sess., ch. 224, § 3, p. 734 (RCW 51.12.100), § 13, p. 740 (RCW 51.32.240). However, RCW 51.12.100 is more specific. Although RCW 51.32.240

provides for recoupment in a variety of circumstances, those circumstances might apply in any variety of industrial injuries in every location. But RCW 51.12.100 applies only to maritime occupations. And RCW 51.12.100(4) applies only when a claimant also receives benefits under a federal maritime scheme. Thus, RCW 51.12.100 is more specific.

We read these provisions harmoniously. RCW 51.32.240 applies whenever DLI seeks to recoup in cases that are not maritime in nature and the provisions of RCW 51.32.240(1) apply, and RCW 51.12.100 applies where the worker's claim is maritime in nature as the legislature plainly provided for in RCW 51.12.100(1). Accordingly, DLI's authority under RCW 51.12.100 to seek reimbursement from claimants covered by maritime law is not limited by RCW 51.32.240.

## II. FINALITY OF AN AWARD AND DLI'S SUBJECT MATTER JURISDICTION

Peterson next argues that because DLI has the subject matter jurisdiction to decide for itself whether a claim falls under maritime law, it is therefore bound by the finality of its December 2011 allowance order. Peterson argues that the only way that DLI can overturn its order and seek repayment is if that order is void. He argues that a Department's order is void where DLI is without subject matter jurisdiction. Therefore, Peterson argues, because DLI has the subject matter jurisdiction to decide whether a claim falls under maritime law—and therefore outside of the IIA—the December 2011 allowance order is not void and DLI is bound by its finality. We disagree.

A. *Department's Authority To Determine Whether Maritime Law Applies*

Peterson argues that because DLI can "decide for itself" whether maritime laws apply, it cannot now void its December, 2011, order because that order was "final." Br. of Appellant at

23. Peterson then cites multiple cases in an apparent attempt to avoid the binding holding of *Rhodes*. He again invokes res judicata, despite the language of *Rhodes*. None of his arguments persuade us.

Under RCW 51.12.100(1), the IIA "shall not apply to a . . . member of a crew of any vessel, or to employers and workers for whom a right or obligation exists under the maritime laws or federal employees' compensation act for personal injuries or death of such workers." Division One of this court has interpreted this to mean that DLI may proactively determine whether maritime laws apply and deny a worker compensation under the IIA. *See Lindquist v. Dep't of Labor & Indus.*, 36 Wn. App. 646, 650, 657-58, 677 P.2d 1134 (1984).

Another subsection of that statute dictates a workers' responsibilities when a worker receives double compensation. RCW 51.12.100(4) provides that if the worker receives payments under both maritime laws and the IIA, the worker shall repay the benefits to DLI.

We read statutory sections harmoniously to give effect to the legislature's intent. *Baker*, 57 Wn. App. at 59. We interpret statutes so that all language is given effect and no portion is "'rendered meaningless or superfluous.'" *Gorman*, 155 Wn.2d at 210 (quoting *Davis*, 137 Wn.2d at 963) (internal quotation marks omitted). We derive the statute's plain meaning from the "'context of the entire act as well as any related statutes which disclose legislative intent about the provision in question.'" *Hopkins*, 11 Wn. App. 2d at 353 (internal citation marks omitted) (quoting *Jametsky*, 179 Wn.2d at 762). LHWCA-covered workers are excluded from the IIA to prevent double recovery and protect the industrial insurance fund. *Gorman*, 155 Wn.2d at 208-09; *accord Rhodes*, 103 Wn.2d at 898.

23

We read RCW 51.12.100(1) and .100(4) harmoniously. A harmonious reading of these subsections allows DLI to both pay workers who might be entitled to federal benefits and also seek reimbursement. To accept Peterson's argument would render RCW 51.12.100(4) meaningless because DLI could never seek reimbursement. DLI would be forced to make a decision on whether a claim was a maritime claim as soon as it was filed. Not only would this render subsection .100(4) meaningless, it would have harmful effects on workers in the future because it would induce DLI to err on the side of denying benefits to protect the fund. Accordingly, we conclude that the statute enabled DLI to initially allow Peterson's claim and later seek reimbursement.

Peterson again argues that "multiple decisions have all held" DLI can "decide for itself" whether a claim is subject to LHWCA. Br. of Appellant at 36. Even accepting that under *Lindquist*, DLI has the authority to decide for itself whether to allow a claim under RCW 51.12.100(1), that determination has no bearing on whether the claimant will eventually recover an award under maritime law. Although DLI *can* decide for itself whether a claim is subject to LHWCA (or the Jones Act) for the purposes of RCW 52.12.100(1) and whether to issue an allowance order under the state scheme, DLI has *no* authority to determine whether the claim is *de jure* subject to LHWCA under the federal scheme. Nor can DLI know whether a claimant will recover a settlement with his employer based on a federal maritime claim. Specifically, here, there was no way for DLI to know at the time of Peterson's 2011 "final" allowance order whether he would eventually receive an award under LHWCA. Nor could DLI know how much Peterson would eventually receive in his settlement after informing DLI in 2015 that settlement negotiations were underway.

Just because DLI has the subject matter jurisdiction to determine whether a claim is a maritime claim and disallow it under RCW 52.12.100(1), does not mean that DLI's decision to allow a claim precludes it from seeking reimbursement in the future. To hold otherwise would prevent a Washington claimant from being able to recover under the State workers' compensation scheme while awaiting a determination of benefits under LHWCA or the Jones Act, and potentially deprive the claimant of any recovery should the federal relief never come. This result would be harmful to all workers who are injured on or near navigable waters.

To support his position, Peterson argues that the "foundational case on [DLI]'s subject matter jurisdiction is *Abraham*, 178 Wash. 160[, 34 P.2d 457] (1934)." Br. of Appellant at 24. But *Abraham* was not a maritime injury case; it was a widow's pension benefits case. 178 Wash. at 161. Indeed, *Abraham* was decided more than 40 years before RCW 51.12.100 became law. Moreover, the appellants in *Rhodes* relied on *Abraham* for this same ineffectual argument: that DLI's original allowance order was final and any change was barred by res judicata, regardless of statutes. *Rhodes*, 103 Wn.2d at 898. The *Rhodes* court distinguished *Abraham*:

> *Abraham* [and the other case Rhodes relied on] are distinguishable. In those cases the administrative agencies actually made factual or legal determinations as to whether, and to what extent, the claimants were covered by the particular disability statute. The administrative decisions in [those cases] were "adjudicated" and "final". There the administrative agencies adjudicated something which was within their power to adjudicate: whether the administrative agency had jurisdiction over a claim.

*Rhodes*, 103 Wn.2d at 899. But here, as in *Rhodes*, DLI had no way of knowing whether Peterson would eventually be covered by the LHWCA. 103 Wn.2d at 899. Thus, *Abraham* does not apply.

Peterson also argues that under *Abraham* he is entitled to an equitable remedy. But the legislature has provided the means of resolution here; therefore, equitable relief is not appropriate. RCW 51.12.100. And even if equity principles applied, allowing Peterson a double recovery is not equitable.

Peterson then cites *Marley v. Department of Labor & Industries*, 125 Wn.2d 533, 537, 886 P.2d 189 (1994). *Marley* was also a widow's benefit case that did not involve maritime benefits. 125 Wn.2d at 535. And the core holding in *Marley* was later superseded by statute. *Birrueta*, 186 Wn.2d at 549. As the *Birrueta* court explained, "the legislature amended the statute . . . in direct response to [the Supreme Court's] holding that '[t]he failure to appeal an order, even one containing a clear error of law, turns the order into a final adjudication, precluding any reargument of the same claim.'" 186 Wn.2d at 549 (alteration in original) (quoting *Marley*, 125 Wn.2d at 538). Thus, *Marley* is abrogated as it pertains to the finality of Department orders.

Next, Peterson cites *Kingery v. Department of Labor & Industries*, 132 Wn.2d 162, 937 P.2d 565 (1997), another widow's benefit case. *Kingery* was decided before the statutory changes that came in the wake of *Marley*, and the court there relied on both *Marley* and *Abraham*. 132 Wn.2d at 169-70. Although the *Kingery* court noted that "an unappealed Department order is res judicata," this was not in the context of a maritime claim and RCW 51.12.100 did not apply. 132 Wn.2d at 169. Thus, *Kingery* is not apt.

Peterson next turns to *Lindquist*, 36 Wn. App. at 649. In *Lindquist*, a decision made one year before *Rhodes*, a worker died near the water and his estate filed claims under both the IIA and the LHWCA. 36 Wn. App. at 647-49. The parties stipulated that the accident was covered

by maritime law. 36 Wn. App. at 647. DLI rejected Lindquist's state claim. 36 Wn. App. at 649. Division One of this court agreed, holding that under RCW 51.12.100(1), DLI had the authority to exclude Lindquist's claim because it fell under maritime laws. 36 Wn. App. at 650-52. The court did not discuss subject matter jurisdiction or res judicata.

Peterson argues that under *Lindquist*, DLI has the subject matter jurisdiction to "reject a claim for benefits because it has independently determined the claim can or should qualify for maritime coverage under the LHWCA." Br. of Appellant at 28. Therefore, he argues, under *Marley*, because DLI could have made a determination as to whether or not maritime law applied at the time of Peterson's accident, DLI could not set aside its December 2011 allowance order because it was not void. This ignores that the parties in *Lindquist* stipulated that maritime law applied. 36 Wn. App. at 647.

This argument exposes Peterson's timing problem. As the *Rhodes* court explained, DLI "did not, and could not, determine Rhodes'[s] case was 'final' for purposes of res judicata since, at the time the [original] order was issued, DLI had no way of knowing whether he was covered by the LHWCA." 103 Wn.2d at 899. In *Lindquist* the parties had stipulated that maritime laws applied. 36 Wn. App. at 647. Here, however, nothing in Peterson's report to DLI identified his work or injury as maritime in nature. Thus, DLI had no way of knowing at the time of Peterson's IIA claim whether he would eventually receive benefits under maritime law.

Peterson also argues that *Olsen v. Department of Labor & Industries*, 161 Wn. App. 443, 250 P.3d 158 (2011), supports his subject matter argument. In *Olsen* the court examined DLI's authority under RCW 51.12.100 as it related to RCW 51.12.102, the portion of the IIA that explicitly applies to asbestos-related diseases in maritime workers. 161 Wn. App. at 448-49.

Because of the special rules involving section .102 and asbestos cases, that case is inapplicable here.

Next, Peterson turns to *Gorman*, 155 Wn.2d at 216. But to the extent *Gorman* applies at all, it works in DLI's favor. The *Gorman* court explained that "[t]he legislature's intent in excluding LHWCA-covered workers from the [IIA] was 'to prevent double recovery by [such a] worker.'" *Gorman*, 155 Wn.2d at 208 (quoting *Esparza*, 103 Wn. App. at 938). *Gorman* cited *Rhodes* favorably, explaining that RCW 51.12.100 "'protect[s] the state's industrial insurance fund when a worker is adequately covered under the LHWCA.'" *Gorman*, 155 Wn.2d at 208-09 (quoting *E.P. Paup Co.*, 999 F.2d at 1348 n.3; *accord Rhodes*, 103 Wn.2d at 898). The *Gorman* court concluded that the IIA "completely excludes LHWCA-covered workers from its provisions, except to the extent necessary to provide temporary, interim benefits as established in RCW 51.12.102 [the asbestos protocols]." 155 Wn.2d at 218-19.

The remainder of Peterson's argument relies on Board decisions to further support his contention that DLI can "decide for itself" on whether maritime laws apply. Br. of Appellant at 30. As previously discussed, this argument fails. Because *Rhodes* applies, and DLI may therefore reject its December 2011 allowance order, Peterson's arguments on his "subject matter jurisdiction" theory fail.

B.     Rhodes *Remains Good Law*

Peterson argues that *Rhodes* is no longer binding, and that instead, *Abraham*, *Marley*, and *Kingery* apply here. For the reasons explained above, we disagree.

Peterson argues that *Rhodes* is no longer good law, but he cites to no cases overruling *Rhodes* or clearly deviating from *Rhodes*'s holding. Where a party does not cite to such

28

authority, we assume there is none. *Kirby v. Dep't of Emp't Sec.*, 185 Wn. App. 706, 728, 342 P.3d 1151 (2014). Furthermore, our Supreme Court does not silently overrule precedent. *Studd*, 137 Wn.2d at 548. We are bound to follow Supreme Court precedent. *1000 Virginia Ltd.*, 158 Wn.2d at 590. Thus, *Rhodes* remains in effect and binds us here. Accordingly, DLI is entitled to collect reimbursement despite the "final" 2011 order.

### III. TRIGGERING OF RCW 51.12.100

Peterson argues, in the alternative, that DLI's right of reimbursement is limited to benefits it paid before April 2016. We disagree.

We give great weight to DLI's interpretation of the IIA. *Jones*, 171 Wn. App. at 621. We liberally construe the IIA to achieve the legislature's intent. *Hopkins*, 11 Wn. App. 2d at 353; *Value Vill.*, 11 Wn. App. 2d at 595-96. We will not, however, "use the liberal construction requirement to support a 'strained or unrealistic interpretation' of the statute." *LaRose v. Dep't of Labor & Indus.*, 11 Wn. App. 2d 862, 882, 456 P.3d 879 (2020) (internal quotation marks omitted) (quoting *Birgen v. Dep't of Labor & Indus.*, 186 Wn. App. 851, 862, 347 P.3d 503 (2015)). We give "effect to the plain meaning of the statute as 'derived from the context of the entire act as well as any related statutes which disclose legislative intent about the provision in question.'" *Hopkins*, 11 Wn. App. 2d at 353(internal citation marks omitted) (quoting *Jametsky*, 179 Wn.2d at 762).

Peterson argues that RCW 51.12.100(4) is "triggered when a worker has concurrent receipt" of both LHWCA and IIA funds, and not after. Br. of Appellant at 40. He cites no case to support this interpretation of the statute, but he argues that because the statute reads that "such

benefits *paid* under this title shall be *repaid* by the worker," it is retroactive only. Br. of Appellant at 41 (emphasis in original) (quoting RCW 51.12.100(4)). This argument fails.

Aside from the tense of the payment verbs, there is nothing in the statute that addresses the timing of federal maritime benefits. Indeed, reading RCW 51.12.100(4) in concert with the text of .100(1) and *Rhodes*, the opposite of what Peterson argues is the case. Because Title 51 RCW "shall not apply"—with no timing caveats—where a claimant receives federal maritime benefits, it follows that *any* funds paid at any time under the IIA shall be repaid. RCW 51.12.100(1), (4). As *Rhodes* explains, "*All benefits* . . . shall be repaid." 103 Wn.2d at 898. Furthermore, the Legislature's intent was to conserve industrial insurance funds when a worker is adequately covered under the LHWCA. *Rhodes*, 103 Wn.2d at 898.

To adopt Peterson's argument here would go against the legislature's intent by allowing double recovery after a claimant receives a lump sum under maritime law. It would also go against the legislature's intent "to protect the State's industrial insurance funds." *Rhodes*, 103 Wn.2d at 898; LAWS OF 1975, 1st Ex. Sess., ch. 224, § 3. It would encourage claimants to seek a lump sum and hide that recovery from DLI for as long as possible so as to maximize payment from the state after receipt of benefits under the federal scheme. Accordingly, we hold that RCW 51.12.100 requires repayment regardless of when the claimant receives maritime benefits.

ATTORNEY FEES

I. STATUTORY FEES

Peterson further argues that the superior court erred when it awarded statutory attorney fees to DLI under RCW 4.84.010. He argues that only injured workers may recover attorney fees. We disagree and affirm the award of statutory attorney fees to DLI.

Here the superior court ordered Peterson to pay costs for transcription and "a statutory attorney fee." CP at 76. RCW 4.84.010 provides that a prevailing party "shall be allowed" statutory attorney fees and "[t]o the extent that the court or arbitrator finds that it was necessary to achieve the successful result, the reasonable expense of the transcription of depositions used at trial." RCW 4.84.010(6) and (7).

Additionally, RCW 4.84.030 provides:

In any action in the superior court of Washington the prevailing party shall be entitled to his or her costs and disbursements; but the plaintiff shall in no case be entitled to costs taxed as attorneys' fees in actions within the jurisdiction of the district court when commenced in the superior court.

Thus, where RCW 4.84.010 allows for the award of fees and costs, RCW 4.84.030 creates an entitlement in the prevailing party. Each is relevant to the award of statutory attorney fees.

Under the IIA, RCW 51.52.130 allows for the award of attorney fees incurred by an injured worker or employer on appeal. It is silent as to the award of fees to DLI. RCW 51.52.150 provides:

All expenses and costs incurred by [DLI] for board and court appeals, including fees for medical and other witnesses, court reporter costs and attorney's fees, and all costs taxed against [DLI], shall be paid one-half out of the medical aid fund and one-half out of the accident fund.

It is otherwise silent as to whether DLI is entitled to fees.

We review challenges to the superior court's award of fees or costs de novo. *Cooper v. Dep't of Labor & Indus.*, 188 Wn. App. 641, 650, 352 P.3d 189 (2015). The rules in civil cases apply to appeals under the IIA. RCW 51.52.140. In any action in superior court, the prevailing party is entitled to costs. RCW 4.84.030; *Black v. Dep't of Labor & Indus.*, 131 Wn.2d 547, 557, 933 P.2d 1025 (1997). The rules set forth in RCW chapter 4.84 apply to appeals in the superior

court under the IIA. *Black*, 131 Wn.2d at 557; RCW 51.52.140; *Allan v Dep't of Labor & Indus.*, 66 Wn. App. 415, 422-23, 832 P.2d 489 (1992) (holding statutory attorney fees were properly awarded to DLI when it prevailed in superior court); *Cooper*, 188 Wn. App. at 651 ("Chapter 4.84 RCW applies to appeals in the superior court from the Board.").

Peterson argues that chapter 4.84 RCW does not apply because the IIA attorney fee provisions are silent as to award for DLI. *See* RCW 51.52.130, -.150. He argues that because the IIA is silent as to fees for DLI, such an award is prohibited. He further argues that RCW 51.52.150's statement that DLI's expenses "shall be paid" from the specified funds mandates those funds as the "only source it can use to pay for its attorney fees." Br. of Appellant at 45-46. His argument is that our Supreme Court's holding from *Black* and our analysis from *Cooper* and *Allan* are all wrong. His argument lacks merit.

Courts have expressly rejected Peterson's argument that the IIA attorney fee provisions preclude an award of fees to DLI. For example, in *Ferencak v. Department of Labor & Industries*, Division One of this court held that DLI is entitled to statutory attorney fees under RCW 4.84.030 where Ferencak argued that only RCW 51.52.130 governs the award of fees in disputes under the IIA. 142 Wn. App. 713, 729-30, 175 P.3d 1109 (2008), *aff'd on other grounds sub nom. Kustura v. Dep't of Labor & Indus.*, 169 Wn.2d 81, 87, 233 P.3d 853 (2010). The *Ferencak* court disagreed, explaining:

> [T]hese two provisions do not deal with the same kind of attorney fees. RCW 51.52.130 allows for an award of actual attorney fees incurred by an injured worker or employer on appeal to the superior or appellate court. In contrast, RCW 4.84.030 allows the superior court to award costs to the prevailing party, and under RCW 4.84.080, those costs include a nominal statutory attorney fee award of $200. RCW 51.52.140 states that the rules of civil procedure apply in all industrial insurance

appeals to the superior court, and the Washington Supreme Court has held that this provision allows the court to impose statutory attorney fees under RCW 4.84.030.

142 Wn. App. at 729-30 (citing *Black*, 131 Wn.2d at 557-58). Applying the same reasoning here, RCW 51.52.130 allows for the award of actual fees to an injured worker, and section .150 merely explains the funding source for DLI's other court costs. In contrast, RCW 4.84.010 allows the superior court to award statutory fees and transcription fees to the prevailing party in superior court. Accordingly, we find no error and affirm.

## II. ATTORNEY FEES ON APPEAL

Peterson also requests attorney fees and costs under RCW 51.52.130 and RAP 18.1. "Under RCW 51.52.130, attorney fees are awarded to the worker or beneficiary where his or her appeal to the superior or appellate court results in a reversal or modification of the [IIA] decision." *Doan v. Dep't of Labor & Indus.*, 143 Wn. App. 596, 607, 178 P.3d 1074 (2008).

Because Peterson does not prevail and we do not modify the IIA's decision, he is not entitled to fees.

## CONCLUSION

*Rhodes* remains binding precedent and defeats Peterson's arguments. Accordingly, we hold that DLI is not barred by res judicata from seeking reimbursement. Likewise, the Board acted within the scope of its authority when it reviewed and modified the IAJ's proposed decision and order.

We also hold that Peterson's petition for review raised all germane issues related to reimbursement, and even if it did not, DLI's ability to seek repayment is not limited by its ability to deny a claim under RCW 5.12.100(1), and that concurrent receipt of IIA and maritime benefits

No. 53885-7-II

is not required to trigger repayment under the statute.  Thus, under RCW 51.12.100 DLI need not

cancel or reject the allowance order to seek reimbursement—under the statute funds shall be

repaid.  Finally, the superior court's award of statutory attorney fees to DLI was proper and we

deny Peterson's request for fees and costs.  The judgment of the superior court is affirmed.

Worswick, J.

We concur:

Le, C.J.

Veljacic, J.

34